GREEN, et al. *v.* PENDERGRAFT

No. 43654          November 8, 1965          179 So. 2d 831

892

*Binder & Bush*, Jackson, for appellants.

*Oscar P. LaBarre, Dent, Ward, Martin & Terry,* Vicksburg, for appellee.

BRADY, TOM P., J.

This is an appeal from a suit brought by the appellee against appellants in the Circuit Court of Warren County, Mississippi, for labor and materials furnished by the appellee in remodeling a house owned by the appellants in the city of Vicksburg, Mississippi. The appellee sued for the amount of $11,888.86, together with a lien against the property for said amount. The appellants denied the indebtedness and filed a cross-bill for the sum of $11,931.50. The jury returned a verdict in favor of ap-

pellee in the sum of $10,500. Judgment was entered in favor of appellee for that amount, together with a lien on the property of appellants. From this judgment appellants have prosecuted this appeal. The record discloses the following pertinent facts:

Appellants sought the services of appellee, whom they had known and who had been in business for many years in Vicksburg, to assist them in planning the remodeling of an old house which the appellant, Benton H. Green, had inherited from his father. Several conferences were held between appellants and appellee with reference to the changes and work which the appellants desired. The appellee wrote a letter to appellants on July 21, 1962, setting forth generally the basis upon which he would undertake the work in accordance with their desires. The letter indicated specifically that the appellee would undertake the work on a cost-plus basis, as the appellee was unwilling to perform the work on a contract basis because it could not be determined with any degree of exactness the cost of the proposed work since the appellants did not know at that time ultimately what they wanted to have done. Appellee's letter submitted a rough estimate of the cost of the proposed work, which amounted to the sum of $16,717. After further discussions, it was mutually agreed that certain items would be deleted as the appellants desired to keep the cost within $14,000. The appellee made a note of the reduction, "Cut to $14,000," on the estimate which he had submitted.

The record shows, and the appellee admits, that during the early discussions of the proposed work appellants did express a desire to keep the work within the $14,000 cost limit but appellee asserts that as the work progressed and as additional items were added at the request of the appellants, the $14,000 figure was disregarded and was not further considered. Appellants admit that the plans were changed and, after the work had begun, the following additions were made: A second

bathroom, a bay window in the family room, a den, a barbeque pit, a chimney, kitchen flooring, and a garage. The garage was included in the original estimate, was then deleted, but was finally included in the work.

In addition, the record discloses that certain work was done on the brick front porch which had not been included in the original estimate. Appellants testified that these additions were made at their request and that they were fully aware that all this work was being done, and both appellants agreed that Mrs. Green was on the job practically every day, in some instances supervising and criticizing the work as it progressed. Mrs. Green stated that she watched the job closely and kept account of the number of loads of concrete that went into the garage floor, all of the lumber and roofing that went into the garage, and the payroll of some of appellee's workmen at various times. Appellants' contention that they were not aware of what was taking place and the probability that the cost of the work would exceed the $14,000 figure is not established by the record.

The appellee, his witnesses, and some of his workmen testified that the presence of Mrs. Green on the job so much of the time, her endeavors to direct the men in the performance of their work, and her close supervision thereof, constituted a harassment of them to such a degree that finally after about six months, on May 9, 1963, the workmen walked off the job and the appellee quit. On May 28, 1963, at the request and insistence of appellants, the appellee returned and resumed work on the house.

The record discloses that during the time the work was progressing statements were made approximately every thirty days by the appellee to the appellants showing the indebtedness due the appellee. These amounts were promptly paid. The appellee submitted monthly statements for four consecutive months, from December, 1962, through March, 1963. The amounts paid by the appellants totaled a little more than $9,000. The monthly

statement for April was not paid, and no statement was submitted for the month of May. On June 16, 1963, the appellee rendered a statement to the appellants for the sum of $8,733.79, and on August 2, 1963, he rendered another statement for the sum of $389.79. The record discloses that when, except for a few items, the house was substantially completed, the work of appellee was finally stopped on July 10, 1963, at the request of appellants, which they admit. Thereafter appellee did not have an opportunity to finish the work which he had undertaken.

Subsequent to his discharge, appellee brought suit for the unpaid sum of $11,888.86, covering all the materials he had purchased and the services which he had expended in remodeling appellants' house. It is the contention of the appellants that the appellee had agreed to perform the work for a sum not in excess of $14,000. The appellants also contend that appellee's estimate was grossly incorrect, misleading, and negligently made and that the appellee's charges for his work were grossly excessive. Appellants further assert that appellee's work was done negligently, incompetently, and demonstrated poor workmanship. In support of these contentions the appellants introduced Mr. William Ward Easley, III, a registered architect, who inspected appellants' house and the work done by appellee, sometime after appellee had performed his last work there. Mr. Easley testified in minute detail with reference to all of the work which had been performed by the appellee and specifically noted many detailed items which, in his opinion, evidenced poor workmanship, improper construction, or defective materials which had been performed or utilized by the appellee in his remodeling of the house.

The record discloses appellee obtained the services of other persons to finish the remodeling of the house, some of which in the original estimate the appellee was not required to complete. Errors in construction, in selection of materials, in the proper treatment of ma-

terials, in the remodeling of the house and the construction of the garage and porch were all noted by Mr. Easley, who made an exhaustive presentation to the jury of the defects which he claimed to have found. The jury returned a verdict for $10,500 in favor of the appellee, and from this verdict this appeal is prosecuted.

Numerous errors are assigned by the appellant, but only three assignments are considered or urged in appellants' brief. These errors are: (1) The court should have declared a mistrial in the case; (2) the verdict does not correspond with and is against the evidence given at the trial; and (3) the verdict of the jury does not correspond with the law of the case and is excessive in amount.

Considering the first error assigned, we note that the motion for a mistrial made by counsel representing the appellants is based upon the assertion that an undisclosed, close relationship existed between a juror named Edward J. Baker and one of the appellee's attorneys, Mr. Oscar P. LaBarre. Mr. Frank Everett, one of the attorneys representing appellants, orally made the following motion:

Defendants move the Court to declare a mistrial in this case for the following reasons: On the voir dire examination of the jury the jurors were questioned by the Court and by counsel about their closeness or relationship to the parties and to all of the counsel in the case. Negative answers were unanimously given by the jury on these questions propounded. After the jury was accepted and the trial in this case had begun and had reached a substantial conclusion of the evidence, it came to the attention of the Defendants' counsel that the juror Edward Joseph Baker is a close neighbor, and that he and his wife are close friends, of one of the counsel for the Plaintiff, Hon. Oscar LaBarre. In the questions propounded to the jury such relationship was not disclosed by the juror and the Defendants did not know of such relationship

and were not given a fair opportunity to examine the juror pertaining to such relationship and to pass on his qualifications as a fair and impartial juror in this case. We, therefore, make this motion for a mistrial in the case, which is made at the conclusion of the evidence and before the case has been presented to the jury.

To this motion Mr. LaBarre, appellee's attorney, replied:

I am Oscar P. LaBarre, one of the attorneys for the Plaintiff of record in this cause. I wish to make a statement for the record that it is true that I am a personal friend of Mr. Edward J. Baker, one of the jurors in this cause. I would also like further to state that Mr. Edward J. Baker and his wife are well known to and friends of the Defendants, Mr. and Mrs. Green, and their children as well. The sons of Mr. and Mrs. Edward Baker are in the Cub Den along with my own son, also being in the same Cub Den of which Mrs. Green is den mother and which meets weekly in the home of Mrs. Green. Mrs. Baker has been in the Green home. And Mr. and Mrs. Baker are members of the same church that Mr. and Mrs. Green attend, the 1st Presbyterian Church of Vicksburg, and are closely associated. When the original voir dire examination was made the jurors were questioned as to whether or not their social relationship with any of the parties to the suit or any of the counsel for any of the parties would influence their determination of this matter, and Mr. and Mrs. Green, knowing Mr. Baker and knowing his family, had an opportunity to question him if they had so desired. He just nodded his head in agreement that it would not affect his decision in this case either one way or the other.

I can personally state that I have not in any manner, shape, or form discussed this case or any of its aspects with Mr. Baker at any time or at any place or under any circumstances either directly or indirectly.

The court overruled appellants' motion for a mistrial, as follows:

In a community of this size it is well nigh impossible to obtain a panel of jurors who are not acquainted in one way or another with the attorneys at the Vicksburg Bar. This happens frequently, — that jurors have certain social or business relationships with attorneys. But this, in itself, will not disqualify a juror so long as he openly advises the Court that he would not be embarrassed to sit as a juror in the case and that he would not be influenced by an acquaintanceship or business relationship with the attorneys. When the Court qualified the jury in this case it asked each and every juror if there were anything in their relationship with any of the attorneys in the case that would cause them any embarrassment to sit as jurors, and the juror Baker, as well as the other jurors, definitely indicated to the Court that there would be no prejudice or leaning on their part by virtue of any acquaintance with any of the attorneys in the case. For that reason, I think the motion should be Overruled.

█ █ We are of the opinion that the motion for a mistrial made by appellants' counsel does not have any substantial basis upon which the trial court could have properly sustained it. It should be noted that we do not have any relationship in the case at bar such as was present in Mississippi Pub. Serv. Co. v. Collier, 183 Miss. 271, 183 So. 379 (1938).

█ █ Moreover it also appears that the juror was as close a friend to appellants' counsel as he was to appellee's counsel. The fact that he happened to be a personal friend or neighbor did not *per se* make him an unfair or partial juror. We fail to find any concrete evidence in the record that indicates that juror Baker intentionally or deliberately deceived the court with reference to his relationship or his ability to be a fair and impartial juror. As a matter of fact, the record

indicates that Mrs. Baker was as close a friend to Mrs. Green as she was to Mrs. LaBarre or any of the other persons or lawyers connected with the case. All of the litigants and the attorneys, and even the trial judge, are members of the First Presbyterian Church, all are well acquainted with each other and are probably mutual personal friends. Counsel for appellants knew or should have known this, and when the jurors were interrogated this juror could have been interrogated fully with reference to any personal relationship which may have existed between him and the appellee or appellee's attorneys.

Next, considering errors (2) and (3) together, namely, that the verdict is against the weight of the evidence and contrary to law and is excessive, we fail to find that the record substantiates the assertions and arguments of the appellants on these two errors. We have read carefully this record, prolix and redundant as it is. The briefs have been given due consideration. The instructions, none of which are objected to by any of the litigants, accurately commend to the jury proper statements of the law which has application.

██ We fail to find that the appellants were denied any of their rights. In the trial of the case a detailed and thorough delineation of the appellants' and appellee's evidence was presented to the jury. The jury was required to decide whether or not the aggregate costs were excessive and unreasonable so as to suggest gross negligence or fraud. ██ It was called upon to ascertain whether or not workmanship of the appellee was poor and incompetent. It was the duty and province of the jury to conclude whether or not the accounts of the appellee were accurate, whether or not there was duplication or overcharge of costs and labor, whether the work was substandard and incompetent, and whether the materials used were faulty and defective. ██ The attitude, demeanor, interest and credibility of the

witnesses were all factors for consideration by the jury.

■■ What the actual agreement was between the parties, any modification thereof which took place as the remodeling progressed, and whether the modification and expenses thereof were authorized, were solely questions of fact for determination by the jury.

■■ The decisions of this Court are legion in support of the well-established rule of law that the verdict of the jury based upon conflicting evidence will not be set aside unless it is contrary to the overwhelming weight of the evidence or it is apparent that the jury was actuated by bias, passion and prejudice. The established rule is sufficiently substantiated by the following cases: U.S.F. & G. v. Smith, 249 Miss. 873, 164 So. 2d 462 (1964), and cases cited therein (249 Miss. at 891, 164 So. 2d at 470-71); Phillips v. Dow Chemical Co., 247 Miss. 293, 151 So. 2d 199 (1963); Straight v. Brinson, 246 Miss. 132, 149 So. 2d 515 (1963); Kelly v. State, 239 Miss. 705, 124 So. 2d 844 (1960); Flournoy v. Brown, 200 Miss. 171, 26 So. 2d 351 (1946); C. & R. Stores, Inc. v. Scarborough, 189 Miss. 872, 196 So. 650 (1940); Hercules Powder Co. v. Williamson, 145 Miss. 172, 110 So. 244 (1926).

From the foregoing we conclude that the errors assigned by the appellants do not merit the reversal of this case. The evidence herein presented sharp questions of fact on the basic issues involved. The jury found for the appellee in the sum of $10,500, for the materials furnished and for the work done for appellants by appellee for which he had not been paid.

■■ The verdict is not against the overwhelming weight of the evidence and does not shock the conscience so as to evince bias, passion and prejudice, and is therefore affirmed.

Affirmed.

*Ethridge, P. J., and Gillespie, Jones and Smith, JJ.,* concur.