642 So.2d 351 (1994)
TOYOTA MOTOR CORPORATION
v.
Lauracia Keyes McLAURIN and Lauracia Keyes McLaurin
v.
SWARTZFAGER FORD COMPANY and Toyota Motor Sales, U.S.A., Inc.
No. 91-CA-00544.
Supreme Court of Mississippi.
June 16, 1994.
As Modified on Denial of Rehearing September 29, 1994.
*352 Michael W. Ulmer, Steven D. Orlansky, Frank A. Wood, Jr., Watkins & Eager, Jackson, for appellant/cross-appellee.
S. Wayne Easterling, Hattiesburg, Tullos & Tullos, Raleigh, for appellee/cross-appellant.
E. Howard Eaton, Taylorsville, for cross-appellee.
Before PRATHER, P.J., and PITTMAN and SMITH, JJ.
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION.
This appeal stems from a personal injury suit, arising from a one vehicle accident, brought by the Plaintiff, Lauracia Keyes McLaurin, against the Defendants, Toyota Motor Corporation, Toyota Motor Sales, U.S.A., and Swartzfager Ford Company. The trial in this case was held on April 22-26, 1991, in the Smith County Circuit Court. At the close of McLaurin's case, the trial judge sustained Toyota Motor Sales, U.S.A. and Swartzfager Ford Company's motions for directed verdict. The jury returned a verdict in the sum of one million dollars ($1,000,000.00) *353 in favor of McLaurin against Toyota Motor Corporation (Toyota). Thereafter, Toyota filed a motion for judgment notwithstanding the verdict, or, alternately for a new trial, or, alternately for a remittitur. These motions were subsequently overruled by the trial judge. Aggrieved by these rulings, Toyota brings its appeal to this Court assigning as error the following:
I. THE TRIAL COURT ERRED IN FAILING TO ENSURE A FAIR AND IMPARTIAL JURY.
II. THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS, BILLY PETERSON.
III. THE TRIAL COURT ERRED IN DENYING TOYOTA'S MOTIONS FOR A DIRECTED VERDICT, PEREMPTORY INSTRUCTION, AND JNOV.
IV. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING TOYOTA'S MOTION FOR A NEW TRIAL.
V. IN THE ALTERNATIVE, THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING TOYOTA'S MOTION FOR NEW TRIAL OR REMITTITUR AS TO DAMAGES.
Also, McLaurin brings a cross appeal. She assigns as error:
SWARTZFAGER FORD COMPANY OWED PLAINTIFF, PURCHASER OF A USED AUTOMOBILE, A WARRANTY OF REASONABLE FITNESS AND THAT THE JURY SHOULD HAVE BEEN ALLOWED TO DETERMINE WHETHER THIS WARRANTY WAS BREACHED BY SWARTZFAGER FORD COMPANY.

II. STATEMENT OF THE FACTS.
The Plaintiff, Lauracia Keyes McLaurin, was involved in a one vehicle automobile accident on Saturday morning, August 30, 1986. The circumstances surrounding this accident form the basis of this case. She was twenty three (23) years old at the time of the accident. At the time of the trial in this case, she was twenty-seven (27) years old. At the time she lived in Taylorsville, Mississippi. Her boyfriend, now husband, James Earl McLaurin, lived in Bay Springs, Mississippi.[1] She worked as a nurse's aid at the Rolling Acres Retirement Center in Raleigh.
McLaurin and James decided that they should purchase a new car. On August 28, 1986, they visited Swartzfager Ford where they found a used 1985 Toyota Corolla SR-5 that they liked. They purchased the car on Friday, August 29, 1986.[2] They spent an hour and a half at the dealership that day. Neither she nor James test drove the car. Nor did the salesman drive the car for them.
After purchasing this Toyota, she and James left Swartzfager Ford and went to a gas station, then to Bay Springs, and then to Taylorsville to McLaurin's mother's home. McLaurin then took her mother for drive in her new car. After leaving her mother's house, McLaurin drove the Toyota to James' house in Bay Springs. In all of their travels in the Toyota after leaving Swartzfager Ford, McLaurin was the person who drove the car.
After returning to James' house, James went to the Short Stop in Bay Springs and bought chicken and two (2) quarts of Budweiser, which they ate and drank. James drank a quart of beer and McLaurin testified that she drank less than a quart. She also said that she did not have anything else to drink nor did she did take any kind of drugs that night. McLaurin spent the night at James' house and went to bed around 10:30.
The next morning, Saturday, August 30, 1986, McLaurin awakened around 6:00 or 6:15 a.m., and dressed for work, leaving between 6:30 or 6:45. She had to be at work in Raleigh by 7:00. The trip from James' house *354 to the Rolling Acres Retirement Center usually took around thirty-five (35) minutes. McLaurin had been late to work on six or seven previous occasions and had been warned that her employment would be terminated if she was late again.
McLaurin testified that as she approached a curve to her left about two and a half or three miles outside of Raleigh, her Toyota started "bouncing" up and down. Her car then went to the left into the other lane of travel. The car then went back to the right and swerved onto the shoulder of the road. She turned the wheel back to the left. The car went back left across the road and left the road on the left side of the road. She said the car was bouncing the entire time. After the vehicle left the road, it hit a tree. She said that at the time of the accident, she was traveling between 45 and 50 miles per hour. Officer Tommy Scott of the Mississippi Highway Patrol determined that the accident occurred at 6:53 a.m. When McLaurin's car hit the tree it split into two pieces. The engine portion, from the fire wall forward, remained lodged against the tree. The passenger portion continued to travel about forty (40) feet before coming to rest in a group of bushes. Officer Scott measured the distance between where McLaurin's car left the road and where she hit the tree as being sixty (60) feet. McLaurin was transported by the Life Star helicopter ambulance to the University of Mississippi Medical Center. At the University Hospital, McLaurin's blood alcohol level was measured at .212 grams/dl.
As a result of this accident, McLaurin suffered many severe and painful injuries. Her right leg was broken in four (4) places. Her left leg was injured so badly that it had to be amputated just below her knee. Her bladder was also damaged in this accident. Finally, McLaurin testified that she still suffers a great deal of pain and also suffers from depression. Her medical expenses relating to the injuries that she received as a result of this accident totaled $88,831.04.
McLaurin filed suit against Toyota Motor Corporation (the manufacturer of the vehicle), Toyota Motor Sales, U.S.A., Inc. (the distributor), and Swartzfager Ford Company (the seller of the vehicle). In her complaint, McLaurin alleged that when her Toyota Corolla left the possession of Toyota Motor Corporation and Toyota Motor Sales U.S.A., Inc., it contained a manufacturing defect which rendered the vehicle unfit for its intended purpose and also when the vehicle left the possession of Swartzfager Ford it contained a defect which made the vehicle unfit for its intended purpose. She alleged that this defect was the sole, or in the alternative, a contributing proximate cause of her accident. She further states in her complaint, "the defendants, and each of them, breach (sic) an implied warranty of merchantability to plaintiff; and they are strictly liable to plaintiff in tort and in negligence for failure to discover the aforesaid defect." In her complaint, she prayed for both actual and punitive damages. Prior to trial, Toyota Motor Corporation and Toyota Motor Sales U.S.A. filed a motion relative to voir dire. In this motion, the defendants requested that prospective jurors with substantial ties to McLaurin's attorneys be excused for cause and for jurors with less substantial ties to these attorneys be sequestered and voir dired individually. In the alternative, they requested more peremptory challenges or a change of venue. This motion was partially granted in that the trial judge agreed to excuse all jurors who have cases presently pending with the attorneys involved, those jurors who are related to the attorneys, those jurors financially indebted to the attorneys, and those jurors in business with the attorneys. Toyota also filed motion for partial summary judgment as to the issue of punitive damages. This motion was denied. Finally, Toyota filed a motion to exclude or limit the testimony of the plaintiff's expert witness, Billy Peterson. This motion was also overruled and Peterson was allowed to testify.
This case was tried before a jury in the Smith County Circuit Court on April 22-26, 1991. At the close of the plaintiff's case in chief all three (3) defendants, Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., and Swartzfager Ford Company, made motions for directed verdict. The trial judge entered a directed verdict for Toyota Motor Sales, U.S.A. and Swartzfager Ford, but Toyota *355 Motor Corporation's motion was denied. Thereafter, the trial against Toyota Motor Corporation proceeded and the issues were submitted to the jury. The jury in a ten to two (10-2) verdict found in favor of the plaintiff, Lauracia Keyes McLaurin, and awarded her damages in the sum of one million dollars ($1,000,000.00).
Following the jury verdict against it, Toyota Motor Corporation filed a motion for judgment notwithstanding the verdict, or alternatively, for a new trial, or alternately, for a remittitur on May 3, 1991. This motion was overruled by the trial judge on May 13, 1991. On May 30, 1991, Toyota Motor Corporation filed its notice of appeal to this Court. Subsequently, McLaurin cross-appealed from the judgment of the trial court sustaining the motions of Swartzfager Ford Company and Toyota Motor Sales, U.S.A., Inc., for directed verdict.

III. ANALYSIS.
This Court holds that this case must be reversed and remanded for a new trial. In so doing, we find only the following assignment of error to merit a full discussion by the Court.

THE TRIAL COURT ERRED IN FAILING TO ENSURE A FAIR AND IMPARTIAL JURY.
It is Toyota's contention that the jury selection process in this case should not be allowed to stand. It claims that because of this, its case was not heard by a fair and impartial jury. Toyota argues that because a substantial number of jurors had in the past been represented by the attorney for the plaintiff, the trial court erred in denying Toyota's challenges for cause and its other objections regarding jury selection. Thus, Toyota contends it is entitled to a new trial. McLaurin, on the other hand, urges that the defendant did receive a fair trial by an impartial jury. She would contend that the trial judge went to great lengths to ensure that an impartial jury was impaneled and that the actions of the trial judge did not constitute reversible error.
On April 11, 1991, Toyota filed a Motion Relative to Voir Dire. In this motion, Toyota requested that the trial judge excuse for cause prospective jurors, which juror, or a family member of that juror, is currently being represented by Eugene Tullos (McLaurin's attorney), or who considers Mr. Tullos to be his/her attorney, has in the past been represented by Mr. Tullos, is related to Mr. Tullos by blood or marriage, is financially indebted to Mr. Tullos, or is in business with or owns property with Mr. Tullos. Toyota asked that prospective jurors who have had family members represented by Mr. Tullos in the past, or are friends, social acquaintances, or members of the same church or club as Mr. Tullos be sequestered and individually voir dired. In the alternative, Toyota prayed for a change of venue, additional peremptory challenges, or such other relief as the court might deem appropriate. The court denied this motion except to the extent it held that prospective jurors who are currently represented by any of the attorneys involved and those related to these attorneys would be excused for cause. Also, any prospective jurors who are financially indebted to or in business with the attorneys would be excused.
Of the 130 residents of Smith County subpoenaed, only 40 were in attendance at the beginning of the voir dire process in the instant case. Of this 40, one did not remain for the entire voir dire. He was later excused by the court. This resulted in a jury panel consisting of 39 members. Of these 39 members, over 60% (24 of 39) had some type of relationship either with the plaintiff, McLaurin, or her attorneys. Within this 24, 19 members (or their family members) had been represented by Mr. Tullos in the past (this includes one member of the panel who was related to McLaurin), another who was related to McLaurin, three (or a family member) were currently represented by Mr. Tullos, and one was related to Mr. Tullos. Therefore, 22 of the 39 (or family members) were currently being represented by Mr. Tullos or had been represented by him in the past. Of these 22, only six responded to the trial judge's question pertaining to representation by these attorneys. Ten more acknowledged representation upon Toyota's questioning in voir dire. In chambers, Toyota *356 noted the panel members' unresponsiveness as to questions regarding representation by the attorneys. While the trial judge did acknowledge that the jurors were not being very responsive, he stated that this was a common problem and was one that was "not unique just to this county." At this point, Toyota requested that under the authority of Marshall Durbin, Inc. v. Tew, 381 So.2d 152 (Miss. 1980), Mr. Tullos be required to disclose any panel members that he had represented. Mr. Tullos revealed six other panel members that he had represented or had represented someone in their family. Also, 14 of the panel members said that they either regarded Mr. Tullos as his/her lawyer or would go to Mr. Tullos if he/she should need any legal assistance.
Based upon the jury panel's unresponsiveness, Toyota made a motion to quash the jury panel, or in the alternative, for a change of venue. The trial judge ruled to hold in abeyance all motions pertaining to jury selection without the parties waving any of their rights by proceeding to select the jury.
The court excused 8 panel members for cause, excluding the member who did not remain for voir dire. The court excused three because either that person or a member of his family was currently being represented by Mr. Tullos. Two were excused because they were related to McLaurin and one because she was related to Tullos. One was excused because her husband had a case pending before the court and another because of medical reasons. After these 8 challenges by the trial judge, a panel of 31 members remained. Of these 31, 18 of these members or a member of their family had been represented by Mr. Tullos. Toyota then challenged these members for cause and this motion to strike was overruled. The judge granted each side six (6) peremptory challenges. Toyota utilized all six (6) of its challenges. It used four (4) of its peremptory challenges on panel members that it had previously challenged for cause. The other two were used on persons who it had not challenged for cause but who had the same last name as the plaintiff.
After the exercising of the peremptory challenges, the jury consisted of eight (8) persons who either he/she or a family member had been represented by Mr. Tullos. Also six (6) of these jurors regarded Mr. Tullos as their lawyer and would go to him if they needed an attorney. All of the jurors impaneled stated either in open court or in chambers that they could be fair and impartial. Following the impaneling of the jury, the defendants made a motion for a mistrial citing the jury selection process as the basis for this motion. The trial judge then overruled this motion.
With regard to the importance of a fair and impartial jury this Court has stated:
Respect for the sanctity of an impartial trial requires that courts guard against even the appearance of unfairness for "public confidence in the fairness of jury trials is essential to the existence of our legal system. Whatever tends to threaten public confidence in the fairness of jury trials, tends to threaten one of our sacred legal institutions."
Mhoon v. State, 464 So.2d 77, 81 (Miss. 1985) (quoting Lee v. State, 226 Miss. 276, 83 So.2d 818, 821 (1955)). In considering the issue of the impartiality of a juror two competing forces enter into the equation. These two forces are first the factor or circumstance which tends to indicate a potential for bias on the part of that juror and secondly the juror's promise that he or she can and will be impartial. In discussing this situation, this Court has stated:
To the extent that any juror, because of his relationship to one of the parties, his occupation, his past experience, or whatever, would normally lean in favor of one of the parties, or be biased against the other, or one's claim or the other's defense in the lawsuit, to this extent, of course, his ability to be fair and impartial is impaired. It should also be borne in mind that jurors take their oaths and responsibilities seriously, and when a prospective juror assures the court that, despite the circumstance that raises some question as to his qualification, this will not affect his verdict, this promise is entitled to considerable deference ... These varied imponderables make selection of jurors a judgment call peculiarly within the province of the circuit *357 judge, and one we will not on appeal second guess in the absence of a record showing a clear abuse of discretion.
Scott v. Ball, 595 So.2d 848, 850 (Miss. 1992) (citing Harding v. Estate of Harding, 185 So.2d 452, 456 (Miss. 1966); Howell v. State, 107 Miss. 568, 573, 65 So. 641, 642 (1914)). However, the Court in Scott noted that the trial judge's discretion was limited by the holding in Hudson v. Taleff, 546 So.2d 359 (Miss. 1989), by stating:
Our implicit, if not explicit holding in Hudson is that the circuit judge's discretion in determining a juror's qualification where a reasonable challenge has been made is considerably narrowed where, without great inconvenience, other prospective jurors may be readily summoned.
Scott, 595 So.2d at 850.
One case of great significance in this area is Mhoon v. State, 464 So.2d 77 (Miss. 1985). Mhoon involved a capital murder sentencing hearing. In Mhoon, the venire for this sentencing hearing consisted of 39 persons after challenges for cause. Of these 39 members, 12 were either policemen or were related by blood or marriage to a policeman. The jury was comprised of twelve (12) persons, six (6) of whom were police officers or were related to police officers. Mhoon, 464 So.2d at 80. The defendant claimed that because of the large number of law enforcement related persons on his venire and jury, he was not afforded a fair and impartial jury. This Court held that while a law enforcement official or a person related to a law enforcement official should not be per se precluded from serving on a jury, it did hold that under the unique situation in that case, "the opportunity for undue influence over the opinions of other jurors was too great a risk." Id. at 82. The Court went further to say that given the "statistical aberration" in the jury pool, the trial judge could have done one of several things including:
1. he could have afforded counsel additional peremptory challenges,
2. he could have increased the size of the available venire as well as affording additional challenges, or
3. he could have sustained at least some of the challenges for cause.
Id. at 81. This Court has held in a later case that this holding "equally applies in civil cases." Hudson, 546 So.2d at 363.
Also of great importance is the case of Hudson v. Taleff, 546 So.2d 359 (Miss. 1989). Hudson involved a medical malpractice suit. Hudson, 546 So.2d at 359-60. In that case, the plaintiff alleged that the jury was not impartial because certain members of the panel or their family members had been treated by the defendant doctor or his partners or had been represented by the doctor's attorney. Of the 25 member jury panel, 48 percent of these had some relationship with the doctors or the attorney. Id. at 361-62. The plaintiff challenged 13 of these 25 panel members for cause and the trial judge granted two of these challenges. The plaintiff requested the court to summon additional jurors and grant additional challenges. The plaintiff also requested a mistrial. Id. at 362. This Court held on appeal that "because of the `statistical aberration' of the makeup of the venire and the strong likelihood that the opportunity for undue influence over other jurors in this case was too great, this Court holds that the trial jury was not impartial." Id. at 363.
Scott v. Ball, 595 So.2d 848 (Miss. 1992) also involved a medical malpractice action in which the plaintiff argued that jurors or their family members had a relationship with the defendant doctor. Scott, 595 So.2d at 849-50. In that case, the plaintiff challenged several jurors because either that person or a member of that person's family had been treated by the doctor who was being sued or his medical partners. Id. at 849. The trial court accepted this proposition as a basis for excusing some, but not all of those challenged for cause by the plaintiff. Id. This Court stated on appeal:
When a rational challenge is made by a party to a prospective juror, and other jurors against whom no challenge is made are available, the circuit judge should ordinarily excuse the challenged juror.
Id. at 850. The court noted that in this case, the trial judge could have excused these persons for cause and still had enough members remaining on the jury panel to form a jury. *358 Also, the Court held that, if needed, the judge could have directed the circuit clerk to "draw more names from the jury wheel." Id. Finally, in discussing the propriety of excusing for cause those members of the jury panel who either they themselves or a member of their family had been treated by the defendant doctor, this Court stated:
In a suit in which a physician is a party, a circuit judge must be sensitive to the qualification of a juror who has himself or herself been treated by him, or whose family members have at one time or another been patients of his. This is especially true in our smaller cities and towns, where often there is a shortage of practicing physicians. Mississippians in less populated areas enjoy a close, fraternal relationship with their doctors, and regardless of a prospective juror's complete sincerity in his belief of his ability to be fair, it is only human nature that in most cases he will be more than reluctant to return a verdict against the physician.
Id. at 850-51.
This Court recognizes the position that a physician and an attorney occupy are not dissimilar. This is especially true in the more sparsely populated areas of our state, and where the attorney has a widely varied general practice. A circuit judge should carefully consider those instances in which a prospective juror or a member of that person's family has been in the past represented by one of the attorneys involved in the matter before him. As is the case with physicians, despite that prospective juror's honest and sincere belief that he or she can be completely fair and impartial, that person may find it very difficult to return a verdict against the client of an attorney to whom that person or a member of his or her family has turned for legal counsel in the past.
Similar to the situations presented in Mhoon v. State and Hudson v. Taleff, in the instant case there existed a "statistical aberration" in the make-up of the venire and the jury. Due to the number of persons on the venire and on the jury who either he/she, or a member of that person's family, had been represented by Mr. Tullos in the past or would go to him should the need for legal assistance arise in the future, this Court holds that the opportunity for these persons to exercise their influence over the remainder of the jury was too great a risk to be taken in the instant case. Therefore, this Court cannot say with confidence that the trial of this cause was heard by a fair and impartial jury. Thus, this case must be reversed and remanded for a new trial on the basis that it cannot be said that the Toyota Motor Corporation was afforded the opportunity to present its defense to the fair and impartial jury to which it was entitled under the law.
This Court does recognize the fact that Smith County is a sparsely populated county and that Mr. Tullos is a prominent lawyer and is well-known throughout the county. Further, in any gathering of people in Smith County, whether on a jury pool or otherwise, it is likely that a large number of these persons or someone related to that person would have been represented by Mr. Tullos on some matter in the past. However, this fact in no way diminishes the trial court's obligation to ensure the litigants before it that their case will be heard and decided by a fair and impartial jury. The circuit judge could have alleviated the problems presented in the instant case by enlarging the venire from which the jury was selected. It is important to note that this Court is not holding that a prospective juror who either he/she or a family member has been represented by an attorney in the present litigation in the past is per se precluded from serving on that jury. However, in the instant case, the "statistical aberration" and the potential for undue influence is just simply too great.
One further note before we leave the issue of jury selection. McLaurin makes the argument that Toyota may not now appeal the refusal by the trial judge to excuse for cause those members of the jury panel who they or their family members had in the past been represented by Mr. Tullos because Toyota did not exercise all of its peremptory challenges on persons it had earlier challenged for cause. In support of her argument she cites the case of Capler v. City of *359 Greenville, 207 So.2d 339 (Miss. 1968) cert. denied 392 U.S. 941, 88 S.Ct. 2323, 20 L.Ed.2d 1403 (1968). In Capler, the jury tendered to the defendant contained eleven (11) men and one (1) woman. The defendant challenged the woman for cause solely because she was a woman. This challenge for cause was denied by the trial court. The defendant then declined his opportunity to peremptorily challenge this woman even though he had three (3) challenges that were never used. Capler, 207 So.2d at 340. In that instance, this Court held that the defendant could not complain about the woman being on his jury because he did not challenge her peremptorily when he had peremptory challenges still available for his use. Id. at 341. However, Toyota's contention on appeal is rooted much deeper than the argument made by McLaurin. Toyota challenges the entire jury selection process in the instant case  from beginning to end. In addition, had Toyota exercised its other two peremptory challenges on prospective jurors who had been challenged for cause because of prior representation by Mr. Tullos, this in no way would have cured the problems presented in the case at bar. Therefore, this case must be reversed and remanded for a new trial.

IV. FINAL ANALYSIS AND CONCLUSION.
In addition to the assignment of error discussed above, this Court has carefully considered all other assignments made by Toyota on this appeal. We find these to be without merit. However, it is important to mention that this Court finds that McLaurin's expert witness, Mr. Billy Peterson, was duly qualified to testify as an expert and was properly allowed to do so. Finally, with respect to the cross-appeal brought by McLaurin, this Court has studied the arguments made by McLaurin and finds them to be without merit. The requests made by McLaurin on her cross-appeal are hereby denied. The Court finds that this cross-appeal warrants no further discussion other than to state that the circuit judge correctly directed a verdict in favor of both Toyota Motor Sales U.S.A., Inc. and Swartzfager Ford Company at the close of McLaurin's case. Thus, this case will be remanded only as to the defendant Toyota Motor Corporation. In conclusion, this Court reverses and remands this case to the Circuit Court of Smith County for a new trial as a result of Toyota Motor Corporation not being afforded the fair and impartial jury to which it was entitled.
DIRECT APPEAL: REVERSED AND REMANDED FOR A NEW TRIAL.
CROSS-APPEAL: JUDGMENT IS AFFIRMED.
HAWKINS, C.J., and PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and SULLIVAN, J.
McRAE, Justice, dissenting:
The majority hangs its hat on pure speculation, surmise and conjecture in reversing the lower court's judgment and holding that this cause was not heard by a fair and impartial jury.
The majority notes that the impaneled jury consisted of eight persons who either he/she or a family member had been represented by plaintiff's counsel, Mr. Tullos. Although the majority concedes that each juror swore to be fair and impartial, it holds that the statistical aberration in the make-up of the jury automatically constitutes a great risk for a biased jury. In effect, the majority has stricken the legal fiction of asking jurors, "Will you be fair, follow the law, even though you may know someone else who is involved with this case?" With today's decision, one should wonder if there can exist fair and impartial jurors when a litigant such as, for example, the Smith County Hospital is involved. The majority's decision provides no guidelines for such a scenario or as to what will or will not be permitted by this Court in subsequent trials. If the Smith County Hospital were a litigant, would not almost all jurors need to be excused since they might either know someone who is employed at the hospital, have been a patient at the hospital, could have a relative who has been a patient or could possibly be a potential patient in the future? What else could the judge have done in this case? He followed our precedents. Accordingly, I dissent.
*360 The majority cites Mhoon v. State, 464 So.2d 77 (Miss. 1985), as authority; however, Mhoon can be distinguished. In Mhoon, this Court held that because six out of twelve jury members were somehow related to law enforcement officers, the defendant was not afforded a fair and impartial jury. Mhoon, 464 So.2d at 82. We stated that this was a "unique factual situation" and an "unusual case." Id. We stated that the trial court judge could have easily added more citizens of the county to the available venire in order that some be found with no law enforcement ties. Query: What is unique or unusual about a case where, in a sparsely-populated county, a great number of citizens know or are in some way connected to a prominent attorney practicing in that county? Needless to say, in our rural state the situation where most citizens of a county have had someone in their family represented by either party's counsel occurs more often than not.
In Henry v. Pearson, 253 Miss. 62, 158 So.2d 695, rev'd on other grounds, 380 U.S. 356, 85 S.Ct. 992, 13 L.Ed.2d 892 (1965), we held that a juror was not disqualified merely because he knew plaintiff's counsel and such counsel was at the time of trial representing juror's company in other litigation. Henry, 158 So.2d at 702. In addition, in Green v. Pendergraft, 253 Miss. 891, 179 So.2d 831 (1965), we found that a juror was not disqualified simply because he was a personal friend of plaintiff's counsel. We held:
The fact that he happened to be a personal friend or neighbor did not per se make him an unfair or partial juror. We fail to find any concrete evidence in the record that indicates that juror Baker intentionally or deliberately deceived the court with reference to his relationship or his ability to be a fair and impartial juror.
Green, 179 So.2d at 835. In the more recent case of Dennis v. State, 555 So.2d 679 (Miss. 1989), we held that the lower court was not in error for allowing a juror who had previously been a private client of the prosecutor to hear the case and provided:
The defendant asserts in his second assignment of error that a private practice client of the county prosecutor was improperly allowed to serve on the jury. However, the record does not reflect that the prosecuting attorney or his firm presently or regularly represented the juror in question. Moreover, the record does not indicate that the juror or any member of his immediate family paid the attorney or his firm any regular monthly or annual salary for legal work.
Dennis, 555 So.2d at 681-82.
In Nixon v. State, 533 So.2d 1078 (Miss. 1987), the same situation was present as in Mhoon where three members of the jury had ties with law enforcement. Nixon, 533 So.2d at 1084. We held that there was "simply no showing of hardship suffered by Nixon. There [were] only bare assertions." Id. The same is true in the case sub judice. The majority never names any specific juror who did anything wrong. There has been no showing of any outside influence nor did anyone testify that the jurors exerted improper influence.
The majority also relies upon Hudson v. Taleff, 546 So.2d 359 (Miss. 1989), in holding that a statistical aberration of the venire existed. However, in holding that the case must be reversed and remanded, we noted:
[T]his case was tried in Lauderdale County, one of our larger counties where the above suggestions [those which Mhoon sets forth and the majority cites as possible alternatives] are readily available, and could be followed for corrective measures in cases where this statistical aberration occurs in a jury pool. However, this Court does not address this situation insofar as the lesser populated rural counties are concerned.
Hudson, 546 So.2d at 363. The majority admits that Smith County is sparsely populated and that Mr. Tullos is a prestigious attorney. The majority opinion further states that "in any gathering of people in Smith County, whether on a jury pool or otherwise, it is likely that a large number of these persons or someone related to that person would have been represented by Mr. Tullos on some matter in the past."
Nothing in the record indicates that the jurors did not abide by their sworn oaths to be fair and impartial. As the majority quotes:
It should also be borne in mind that jurors take their oaths and responsibilities seriously, *361 and when a prospective juror assures the court that, despite the circumstance that raises some question as to his qualification, this will not affect his verdict, this promise is entitled to considerable deference. Harding v. Estate of Harding, 185 So.2d 452, 456 (Miss. 1966); Howell v. State, 107 Miss. 568, 573, 65 So. 641, 642 (1914).
Scott v. Ball, 595 So.2d 848, 850 (Miss. 1992). The majority concludes that it "cannot say with confidence that the trial of this cause was heard by a fair and impartial jury." However, this is not the appropriate standard of review since "juror impartiality and fairness is a judicial question to be determined on a case by case basis, [and] the court's judgment will not be disturbed unless clearly wrong." Dennis, 555 So.2d at 682. See Walls v. State, 371 So.2d 411, 413 (Miss. 1979); Odom v. State, 355 So.2d 1381, 1383 (Miss. 1978).
Bare assertions should not be sufficient to reverse this case. No evidence was presented in the record to indicate that the lower court erred in its determination, and, therefore, the plaintiff's award should be affirmed.
DAN M. LEE, P.J., and SULLIVAN, J., join this opinion.
NOTES
[1] Lauracia Keyes and James Earl McLaurin were married on May 31, 1987.
[2] McLaurin's automobile was manufactured in Japan by the Toyota Motor Corporation. Toyota Motor Sales U.S.A., Inc. was the importer of this car. The car went to Gulf States Toyota, a Toyota distributor based in Houston, Texas. The car was sold by Gulf States Toyota to Walker Toyota. Walker Toyota then sold the car to Carl's Budget Rent-A-Car. Carl's sold it to a used car broker, who in turn sold it to Swartzfager Ford. The vehicle had approximately 33,000 miles on it when it was purchased by McLaurin.