# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-CA-00909-SCT

*CITY OF PICAYUNE, A MISSISSIPPI*
*MUNICIPAL CORPORATION*

*v.*

*LANDRY LEWIS GERMANY ARCHITECTS, P.A.,*
*f/k/a LANDRY AND LEWIS ARCHITECTS, P.A.*


| | |
|---|---|
| DATE OF JUDGMENT: | 08/11/2022 |
| TRIAL JUDGE: | HON. ANTHONY ALAN MOZINGO |
| TRIAL COURT ATTORNEYS: | JAMES K. DUKES |
| | JAMES GRADY WYLY, III |
| | W. EDWARD HATTEN, JR. |
| | THOMAS LYNN CARPENTER, JR. |
| | SHANNON LADNER OZERDEN |
| | LAUREN REEDER McCRORY |
| | KATIE RYAN VAN CAMP |
| | NATHAN RYNE HAND |
| | MARA MICHELE LESIEUR JOFFE |
| | EDWARD C. TAYLOR |
| | PHILLIP LLOYD LONDEREE |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | EDWARD C. TAYLOR |
| | KATIE RYAN VAN CAMP |
| ATTORNEY FOR APPELLEE: | PHILLIP LLOYD LONDEREE |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND RENDERED - 03/14/2024 |
| MOTION FOR REHEARING FILED: | |


**BEFORE KING, P.J., CHAMBERLIN AND ISHEE, JJ.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.     At issue in this appeal is a $210,000 judgment under the tort claims act against the

City of Picayune based on the City's alleged negligence in failing to volunteer information about a juror during voir dire in a civil trial to which the City was a party. We conclude that Landry Lewis Germany Architects, P.A., failed to show the City negligently breached a duty owed to it. We therefore reverse and render the award of damages.

**FACTS**

¶2. The City of Picayune filed suit against Landry Lewis, alleging defects in an addition to the Picayune City Hall. The suit went to trial, and one of the veniremen was Lorenzo Breland, the son of Larry Breland, a Picayune city councilman. The City's representative informed the City's counsel of Breland's relationship but otherwise took no action. Breland was ultimately seated on the jury. During closing arguments after five days of trial, an unidentified spectator informed a court clerk of Breland's relationship with the City by way of his father. The clerk then told the trial judge, who dismissed Breland as a juror. One juror had already been dismissed, and there were no alternates available, which led the trial court to offer the option of a mistrial or proceeding with eleven jurors. Landry Lewis elected for the mistrial.

¶3. The trial court subsequently entered an order for various individuals, including the City's representative and juror Breland to show cause why they should not be held in contempt. Criminal contempt proceedings were referred to another circuit judge, who found no contempt by anyone associated with the trial. In finding no contempt criminal contempt, the second judge observed:

> The primary thrust of the Court, statements and questions during the voir dire pertaining to relationships included, I quote, "There's no getting around that

2

a lot of you might have communicated with the City of Picayune. That's not the question I'm about to ask you. The question I'm going to ask you is, in consideration of any relationship you might have to the City, can you both be fair to both sides? Furthermore, is there anybody in here"—as I continue reading, "that has a relationship with the City of Picayune that is such that they cannot be fair." Now, if that clause was not there, we might be different, but we are there. That is a direct quote from the voir dire transcript[.]

¶4. After the mistrial, the City voluntarily dismissed its claims against Landry Lewis with prejudice, but that did not end the litigation. Landry Lewis moved to amend its answer to assert counterclaims against the City and various individuals present the trial or involved in it. Ultimately, the circuit court permitted Landry Lewis to proceed on a counterclaim for negligence against the City based upon its failure to inform the trial court of juror Breland's familial relationship. The counterclaim was brought to a bench trial under the Mississippi Tort Claims Act, and the trial court awarded Landry Lewis $210,000 in damages. The City has appealed from that judgment.

**DISCUSSION**

¶5. The issue presented by this appeal is straightforward: did the City of Picayune owe a duty of care in tort to Landry Lewis that was breached by its failure to go around its lawyer and directly inform the trial court that the potential juror, Lorenzo Breland, was the son of a Picayune city councilman? We conclude that it did not, and this holding resolves all the issues presented by this appeal. We therefore reverse and render the award of damages for negligence.

¶6. The material facts are largely undisputed: Lorenzo Breland was the son of Larry Breland, a Picayune city councilman. Councilman Breland was subpoenaed as a witness in

3

the underlying lawsuit, but he ultimately did not testify. There was no evidence juror Breland had any discussions with his father about the details of the case nor any extraneous knowledge or personal interest in the outcome. He filled out a juror information card but left many parts of it blank, including the names of his parents. After the trial court became aware of the identity of juror Breland's father, juror Breland was called to chambers and averred that he did not speak up at voir dire because he had understood the questions directed to the panel to have asked whether he could be fair and impartial, not whether he had a familiar relationship per se. Breland said he "did raise it" (presumably referring to his hand) until the trial judge "said . . . would it actually affect your decision making?" This was borne out by the transcript of the trial, which was examined by a second circuit judge, who found no contempt by anyone involved. On adverse examination at the second trial, however, Breland did admit he would be more likely to believe his father than a stranger. It was also pointed out that Breland had falsely indicated on his juror information card that he had never been a defendant, plaintiff, or witness in a civil case; Breland had been the plaintiff in a personal injury lawsuit in Louisiana filed in 2015.

¶7. Jim Luke, then the city manager,[1] attended the first trial as a representative of the City. Luke testified that he had known Larry and Lorenzo Breland for many years and that he had informed the attorney representing the City that juror Breland was the son of Councilman Breland upon first noticing him in the venire. He and other city employees were surprised and concerned that Breland was seated on the jury, and Luke again pointed it out to the

---

[1] Jim Luke was later elected mayor of Picayune and held that office at the time the instant proceedings concluded.

attorney representing the City after the jury was empaneled; but he considered it to be a technical matter entrusted to the attorney and took no further action. Luke added that he did not direct the conduct of the trial and was not privy to all the attorney's interactions with the court or opposing counsel. As the city manager, Luke did not have the authority to make litigation decisions on behalf of the City.

¶8.     Councilman Breland testified that he had heard his son was on the jury after it was seated, but he had been sequestered during the trial due to his potentially being called as a witness and did not see it himself until the trial was nearly over.

¶9.     The trial court found that the City had negligently "failed to alert the Court and [Landry Lewis] of Lorenzo Breland's fraud upon the Court." The court elaborated:

> Juror Breland clearly misled the court about his relationship with Councilman Breland, his father, and longstanding relationship with [now-]Mayor Luke. . . . [T]he court finds . . . that both Councilman Breland and his son were voluntary participants in a proceeding during which fraud was committed upon the Court[] and that Juror Breland never sought to be excused from jury duty because of what he knew was his important conflict of interest.

¶10.    The trial court awarded damages based on what it found to be Landry Lewis's losses resulting from the cost of this first trial and lost revenue caused by reputation damage. The judgment was founded on what the trial court determined to be actionable negligence. The court observed that "[p]ublic officials have a duty of reasonable care to avoid the fraud, waste, and abuse of public funds." It further noted that this Court has held that "[t]he standard of care applicable in cases of alleged negligent conduct is whether the party charged with negligence acted as a reasonable and prudent person would have under the same or similar circumstances." *Johnson v. Goodson*, 267 So. 3d 774, 778-79 (Miss. 2019) (internal

quotation marks omitted) (quoting *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 175 (Miss. 1999)).

¶11.    At the outset, we acknowledge the trial judge's legitimate concern with the appearance of impropriety resulting from seating a juror who was the son of a Picayune city councilman and potential witness in the trial.  We likewise find no basis to criticize the trial judge's decision to grant a mistrial in the original trial.  But sitting as an appellate court, we must observe that the issue of whether juror Breland was disqualified from sitting on the jury is not as straightforward as has been suggested: "There is no per se rule of disqualification due to a personal or professional relationship between party and proposed juror."  *Taylor v. Premier Women's Health, PLLC*, 343 So. 3d 1027, 1032 (Miss. 2022) (citing *Toyota Motor Corp. v. McLaurin*, 642 So. 2d 351, 358 (Miss. 1994)).  "Mere acquaintance or even family relationships with parties or those related to parties is not sufficient to require that a juror be excused for cause."  *Powers v. State*, 371 So. 3d 629, 672 (Miss. 2023)  (internal quotation marks omitted) (quoting *Patton v. State*, 248 So. 3d 763, 769 (Miss. 2018)).

¶12.    We also observe that the fact that the second circuit judge found no criminal contempt should not preclude a finding by the trial court of negligence or fraud on the court, as criminal contempt has a higher burden of proof—beyond a reasonable doubt.  *In re Shamsiddeen*, 358 So. 3d 324, 330 (Miss. 2023).

¶13.    At any rate, this Court need not examine the circuit court's finding that juror Breland committed a fraud on the court to conclude that there was no basis for finding tort liability in the City's allegedly negligent failure to bring his identity to the Court's attention.  Even

though Landry Lewis acknowledges that duty is a fundamental question of the appeal and contends that this case presents a question of first impression, Landry Lewis devotes only a few pages of its thirty-eight-page brief to arguing a legal duty existed. It cites not a single case even remotely similar to the one at bar, and its arguments are founded on the vaguest and most generalized statements of negligence law.

¶14. Today's case is not so novel as Landry Lewis suggests. *Roussel v. Robbins*, 688 So. 2d 714, 725 (Miss. 1996), though it dealt with allegations against an attorney, is instructive in stating explicitly that "[t]here is no such tort as 'the use of a falsehood to persuade the court to decide against [a party].'" The rationale for not permitting tort suits for most litigation-related behavior is that there are other mechanisms for enforcing rules and codes of conduct in litigation—there are "myriad options, such as sanctions, bar complaints, and Mississippi's Litigation Accountability Act . . . available . . . to air . . . grievance[s]." *Henley, Lotterhos & Henley, PLLC v. Bryant*, 361 So. 3d 621, 634 (Miss. 2023).

¶15. Tort duties are a question of law for the Court and "generally . . . [are] imposed . . . as a matter of public policy." *Samson v. Unum Life Ins. Co. of Am.*, 300 So. 3d 930, 938 n.11 (Miss. 2020) (citing W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 92 (5th ed. 1984)). We decline to create a tort duty under the facts of today's case.

¶16. Finally, we emphasize that trials and voir dire (though often conducted, in part, by the Court, as here) are adversarial processes. Breland's incomplete juror information card was available to both sides, and the similarity of his name to Councilman Breland's (Larry and Lorenzo), his Picayune home address, and other surrounding facts suggest that the proximate

7

cause of Breland's being seated on the jury was the failure of adversarial testing by Landry Lewis, not misconduct on the part of the City of Picayune.

## CONCLUSION

¶17.    A party litigant has no duty in tort to party opposite to personally intervene during a trial to prevent a fraud on the court by a potential juror.  We therefore reverse and render the award of negligence damages.

¶18.    **REVERSED AND RENDERED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR.**