87 N.J. Super. 195 (1965)
208 A.2d 444
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RAYMOND JOHNSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided March 19, 1965.
*196 Mr. John W. Noonan, Assistant Prosecutor, for respondent (Mr. Brendan T. Byrne, County Prosecutor of Essex County, attorney).
Mr. James T. Dowd for appellant (Messrs. Dowd & Dowd, attorneys).
CRANE, J.C.C.
At about 11:45 P.M. on May 26, 1964 two police officers of the Town of West Orange on patrol observed the defendant walking in an unusual manner. The officers approached him more closely and engaged him in conversation. Defendant's pupils were observed to be constricted and his eyeballs were in a glassy state. It took defendant a long time to formulate and express answers to questions. No odor of alcohol was detected. An examination of his right forearm revealed scratches and what appeared to be puncture wounds. The defendant then was taken to police headquarters, questioned, and ultimately examined by the police department physician who pronounced him under the influence of a narcotic drug.
*197 Testimony was offered by defendant that he requested several times to make a phone call, which request was denied, and after the examination by the police physician he requested that he be examined by a physician of his own choice, which request was also denied. He stated that he was held in custody for 26 hours before being released, and he was not formally charged until June 2, 1964, almost a week later. He denied the use of drugs and explained the marks on his arms as being the result of scratches received during the course of his work as a tree surgeon. Defendant's testimony was not contradicted by any of the State's witnesses and no reason appears to disbelieve it. It may therefore be found as fact that he requested the opportunity to be examined by a physician of his own choice, was denied such an opportunity, and was held in custody for a period of 26 hours.
The defendant was charged with being under the influence of a narcotic drug, in violation of N.J.S. 2A:170-8, a disorderly person offense. He was convicted of that offense in the West Orange Municipal Court and has appealed.
The inquiry here is whether, in a case where defendant is charged with being under the influence of a narcotic drug, the denial of an opportunity to be examined by a physician of his own choice deprived defendant of any rights guaranteed by the Constitution of the United States or of the State of New Jersey. The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty or property, without due process of law." And among the natural and unalienable rights guaranteed by Article I, paragraph 1, of the New Jersey Constitution is the right to defend one's liberty.
The aim of due process is to prevent fundamental unfairness. State v. Vaszorich, 13 N.J. 99 (1953). It includes as one of its essential ingredients the opportunity to defend. Twining v. State of New Jersey, 211 U.S. 78, 111, 112, 29 S.Ct. 14, 53 L.Ed. 97 (1908); State v. Zied, 116 N.J.L. 234, 236 (E. & A. 1935). If established, the deprivation of a reasonable opportunity to prepare a defense may be *198 regarded as a denial of due process. Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).
In a prosecution under N.J.S. 2A:170-8 lay witnesses, if sufficiently experienced and trained, may testify generally as to the reaction of narcotic drug users and of the techniques of the use; they may not, however, invade the fields of chemistry, medicine or psychiatry. State v. Campisi, 23 N.J. 513, 520 (1957). The testimony of a physician concerning the physical state of a person accused of being under the influence of narcotics tends to carry rather persuasive weight because of its nature as expert testimony. See State v. Margo, 40 N.J. 188, 190 (1963). The opportunity to present at trial an expert medical witness to testify as to defendant's physical condition would be, to say the least, a highly desirable weapon in the arsenal of defense.
No cases have been found in New Jersey or other jurisdiction dealing specifically with the question of the right of a defendant who is charged with use of narcotics to have his own physician examine him. A few cases have been found, however, in other jurisdictions dealing with the analogous condition of alcoholic intoxication.
In State v. Munsey, 152 Me. 198, 127 A.2d 79 (Sup. Jud. Ct. 1956), the right of a defendant charged with driving while under the influence of alcohol to have his physician take a blood sample for test purposes was discussed. The court said:
"When the respondent is held incommunicado and his requests for assistance in procuring a doctor are unreasonably ignored or refused by the detaining officers, it may be said that the respondent is denied the essentials of governmental fair play. Officers charged with law enforcement must always be mindful that the public has as great an interest in the vindication of the innocent as it does in the punishment of the guilty." (127 A.2d, at p. 82)
The Supreme Court of California held in the case of In re Newbern, 55 Cal.2d 508, 11 Cal. Rptr. 551, 360 P.2d 47 (1961), that where a defendant was denied the opportunity of calling his own physician for the purpose of making a blood alcohol test following his arrest for alcoholic intoxication, *199 a denial of due process occurred. The court said, "The denial of an opportunity to procure a blood test on a charge of intoxication prevents the accused from obtaining evidence necessary to his defense and is a denial of due process * * *." (11 Cal. Rptr., at p. 554, 360 P.2d, at p. 50)
In Virginia the refusal of police officers to take a defendant charged with operating an automobile while intoxicated to a physician for an examination shortly after his arrest was held not to deprive defendant of evidence which would have substantiated his claim of innocence; however, it was held that the illegal detention of defendant for a period of 4 1/2 hours deprived him of an opportunity to go to a physician himself. Winston v. Commonwealth, 188 Va. 386, 49 S.E.2d 611 (Sup. Ct. App. 1948). The court said, "But where, as here, the effect of the failure of the arresting officer and of the custodian of the arrested person to perform their respective duties is such as to deprive a person of the constitutional right to call for evidence in his favor, his subsequent conviction lacks the required due process of law and cannot stand." (49 S.E.2d, at p. 616) State v. Reel, 254 N.C. 778, 119 S.E.2d 876 (Sup. Ct. 1961), expressed the opposite view.
In this case defendant contended that the alleged needle puncture marks on his arm were not needle marks but the result of scratches received in his work as a tree surgeon. Some of the tests administered by the police physician, such as the Romberg test and the finger-to-nose test, were performed in a manner described as fair. Possibly a physician of defendant's own choosing might have had a different opinion than that of the police physician. Unless withdrawal symptoms were evident, the passage of a substantial period of time, such as the 26-hour period defendant was held, would probably make it more difficult for a physician to formulate an opinion of defendant's condition at the time of his arrest. Defendant was thus prevented from preparing expert opinion evidence of his physical condition at or about the time of his arrest. This was fundamentally unfair.
*200 It is concluded, therefore, that the denial of an opportunity to be examined by a physician of his own choice, coupled with the 26-hour detention, constituted a deprivation of the right to defend his own liberty guaranteed by Article I, paragraph 1, of the New Jersey Constitution, and a deprivation of due process guaranteed by the Fourteenth Amendment to the United States Constitution.
The judgment of conviction below is reversed.