207 So.2d 339 (1968)
Willie CAPLER
v.
CITY OF GREENVILLE.
No. 44619.
Supreme Court of Mississippi.
February 12, 1968.
Rehearing Denied March 11, 1968.
James L. Robertson, Keady, Campbell & DeLong, Greenville, for appellant.
Robertshaw & Merideth, Bogen, Wilkes & McGough, Greenville, for appellee.
GILLESPIE, Presiding Justice.
This case originated in the municipal court of the City of Greenville where Willie Capler was charged with operating a motor vehicle while under the influence of intoxicating liquor. Found guilty in municipal court Capler appealed to the County Court of Washington County where he was tried de novo and convicted. He was assessed with a fine of $100, then appealed to the circuit court where the judgment was affirmed. Pursuant to the provisions of Mississippi Code 1942 Annotated section 1616 (1956) the circuit court entered an order certifying that constitutional questions were involved in the case, thus qualifying the case for further appeal to this Court.
*340 The facts stated in the light of the general verdict of guilty (and as established by the great weight of the evidence) are as next stated. At about one o'clock A.M., a police officer observed an automobile being driven on a Greenville street which was weaving from one traffic lane to the other. It nearly ran off the right side of the street. The officer stopped the automobile which was being driven by defendant. After defendant got out of his automobile the officer observed that defendant walked with a stagger and emitted a strong odor of alcohol. Defendant was arrested for reckless driving and driving while intoxicated. At the police station defendant was thick-tongued, his speech was slurred, and his conversation was practically incoherent. In short, he was drunk. The officers had no difficulty with defendant except he would not walk and had to be carried from the elevator to what some of the witnesses call the "drunk tank", a large cell with a concrete seat around the side with a ventilator in the top. Defendant made no request to call a lawyer or anyone else. At that time the jailer had a rule that intoxicated persons usually remain in the "drunk tank" for a period of six hours. At no time after his arrest was defendant advised that he had a right to a lawyer, however, sometime after daylight defendant requested permission to call a lawyer. This request was granted and defendant called his attorney. At all stages of the prosecution thereafter, including trial, defendant was represented by counsel of his choice.

I.
The first question for our decision is whether the county court erred by overruling defendant's motion to quash the venire and in refusing to excuse for cause the women who were on the jury panel. Before the trial on the merits began, defendant filed a motion to quash the venire because of the fact that of 123 prospective jurors called for the term of court at which defendant was tried, forty were women. The court overruled the motion to quash the venire although the prosecution also requested the court to sustain it. Both the defendant and the prosecution requested that the women called to serve on the jury be excused for cause because they were women. The court announced at the beginning of the trial that no women would be excused for cause because they were women. The prosecution exercised the City's six peremptory challenges by excusing six women. The jury tendered to the defendant consisted of eleven men and one woman. The defendant challenged the one woman for cause on the sole ground that she was a woman. The court denied the challenge. The defendant then declined to challenge the woman peremptorily, although he had three peremptory challenges which were never used.
The trial court's affirmative action, over the objection of both the prosecution and defendant, in insisting that women serve on the jury was manifestly in violation of law. It should be noted at the outset of our discussion of this question that we are not saying that women should not serve on juries. It may be desirable that both men and women serve on juries, depending on one's point of view. We are saying that the legislature alone has the power to determine whether women serve as jurors. The Mississippi Constitution, section 264 vests in the legislature the power to provide for the qualifications of jurors. This court in State v. Hall, 187 So.2d 861 (Miss. 1966) held that whether women should serve on juries is a matter to be determined by the legislature, and that the court would not take from the legislature that which the constitution has entrusted to it. This was reaffirmed in Pendergraft v. State, 191 So.2d 830 (Miss. 1966). As late as December 4, 1967, this Court in Amis v. State, 204 So.2d 848 (Miss. 1967) reiterated that legislative action rather than judicial action is necessary to modify the statute so as to include women on juries. These decisions are consistent with Mississippi Constitution, section 1 which divides the powers of government between the three branches, and section 2 which forbids any person or collection of *341 persons, being one or belonging to one of these departments, from exercising any power belonging to either of the others. We must conclude therefore, that the county court erred in affirmatively requiring that women serve on the jury over the objection of the defendant and the City. If this course is followed in all cases it could result in seriously impeding the administration of the laws.
The question arises whether defendant is in a position to raise the issue that the jury was not lawfully constituted. The City argues that the defendant waived his rights in this respect by accepting the jury consisting of one woman and eleven men at a time when he could have excused the woman by exercising one of his three unused peremptory challenges. Counsel for defendant made the decision not to peremptorily challenge the woman juror after the court asked if the woman juror was to be challenged peremptorily. Defendant's counsel replied to the court as follows: "No, I don't believe I will challenge her peremptorily." Where a party chooses not to challenge a juror peremptorily when he has challenges that are unused, he may not thereby put the court in error because the court declined to permit the juror to be challenged for cause. Bone v. State, 207 Miss. 20, 41 So.2d 347 (1949). To hold otherwise would allow a party to invite error and take advantage of it on appeal; or, to put it otherwise, take advantage of an error he helped bring about. Moreover, it would allow a litigant to experiment with the verdict by taking advantage of an acquittal and retaining the power to reverse a verdict of guilty. We conclude that defendant may not complain of the fact that a woman served on the jury.

II.
The next contention is that the trial court erred in overruling his motion to quash the affidavit and dismiss the defendant because he was not advised of his right to counsel at a critical stage of the proceedings. We consider this question in light of the fact that only a misdemeanor is involved. However, we do not ground our decision solely on that basis, but only as one factor which the court has considered.
At the outset of the discussion of this question it should be stated that there was no inculpatory statement involved in this case. Nor was any evidence obtained as a result of the alleged denial of defendant's right to counsel. The argument of defendant on this point is able, ingenious, and reflects the most exhaustive research and effective organization of the authorities. In summary, defendant says that the initial hours of detention in a case involving intoxication are the most critical ones; because defendant did not have counsel at this stage he was totally stripped of all potential means of obtaining evidence to rebut the testimony of the police officers; any lawyer called to the jail after defendant's detention would have immediately demanded some objective, scientific test of defendant's state of sobriety, or would have secured the presence of impartial witnesses to observe defendant's condition. The fact that defendant had no such assistance of counsel, he argues, had the effect of destroying evidence which may have established his innocence. Among other cases, defendant cites Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); City of Tacoma v. Heater, 67 Wash.2d 733, 409 P.2d 867 (1966); State v. Johnson, 87 N.J. Super. 195, 208 A.2d 444 (1965); State v. Krozel, 24 Conn. Sup. 266, 1 Conn.Cir. 549, 190 A.2d 61 (1963); Winston v. Commonwealth, 188 Va. 386, 49 S.E.2d 611 (1948).
In our opinion a rule requiring that in all events a person arrested for a misdemeanor involving drunkenness must be advised of his right to counsel immediately upon being detained is not required by the guarantees vouchsafed by the Sixth Amendment *342 to the Constitution of the United States as interpreted by Gideon, Escobedo, and Miranda. The other authorities relied upon by defendant are interesting but do not persuade us. Our attention has not been called to any case by which this Court is bound to accede to defendant's argument.
If the City had an absolute duty to warn defendant of his right to counsel immediately upon being brought to jail several potential questions could have arisen, including whether the defendant was competent to respond, whether he was competent to advise the officers if he was indigent, whether the City could rely on any waiver the defendant might undertake to make, whether defendant could intelligently confer with his attorney if he had one, and whether the City should have had available in the early morning hours an attorney and facilities and personnel for such scientific tests as the attorney might desire. The rule insisted upon by defendant could lead to absurd situations. This Court is keenly aware of its responsibility to safeguard the rights of persons accused of crime, but it is also mindful that such safeguards can be pressed too far. We are of the opinion that a proper regard for the public interest and common sense require this Court to hold that defendant should not be discharged merely because he was not advised of the right to counsel immediately after arrest, especially in view of all the circumstances including the fact that (1) the charge was a misdemeanor, (2) defendant was probably too drunk to intelligently respond until he sobered up, and (3) no statement or other affirmative advantage resulted from the fact that he had no counsel until some hours later.

III.
Defendant finally argues that leaving aside his right to counsel the fact that he was placed in the "drunk tank" for six hours without administering some kind of scientific test, or in some way affording defendant the opportunity to obtain independent, objective evidence of his condition, amounted to suppression of evidence in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States and Mississippi Constitution of 1890, Article 3, section 14. We think that what has been said disposes of this contention. The fact that there was a rule or custom of keeping intoxicated persons in custody for six hours before permitting them to make telephone calls (a practice said to have been discontinued) did not result in any statement or confession from the defendant. He did not make any request to call an attorney, and the existence of the six-hour rule resulted in no detriment to defendant.
We are therefore of the opinion that the judgment of conviction should be and it is affirmed.
Affirmed.
PATTERSON, INZER, SMITH and ROBERTSON, JJ., concur.