595 So.2d 848 (1992)
Ida Bell SCOTT, as the Wrongful Death Beneficiary of Fred Scott
v.
Dr. David A. BALL.
No. 90-CA-0508.
Supreme Court of Mississippi.
February 26, 1992.
*849 Cynthia Mitchell, Charles M. Merkel, Jr., John H. Cocke, Merkel & Cocke, Clarksdale, for appellant.
Janet G. Arnold, Holcomb Dunbar Connell Chaffin & Willard, Jack F. Dunbar, Holcomb Dunbar Firm, Oxford, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
HAWKINS, Presiding Justice, for the court:
Ida Bell Scott, wrongful death beneficiary of Fred Scott, appeals from a judgment in favor of Dr. David A. Ball in a malpractice suit in the circuit court of the Second Judicial District of Panola County. The issues on this appeal are the refusal of the circuit judge to remove jurors challenged for cause, and Batson violations under the United States Supreme Court decision in Edmonson v. Leesville Concrete Co., Inc., 500 U.S. ___, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). We find the second issue requires reversal.

FACTS
Ida Bell Scott, the widow of Fred Scott, brought this wrongful death action against Dr. David A. Ball on November 21, 1988, alleging that Dr. Ball committed medical malpractice by failing to diagnose and treat Fred Scott's myocardial infarction. The case was tried February 26-28, 1990. During jury selection, Scott challenged for cause twelve potential jurors based on voir dire responses that they or their family members had relationships with Dr. Ball or other physicians in his clinic. The trial judge sustained seven of these challenges for cause and denied the remaining five challenges.
Scott is black and Dr. Ball is white. Counsel for Ball exercised all of his four peremptory challenges against black members of the jury panel. Counsel for Scott objected to Ball's alleged discriminatory exercise of peremptory challenges and moved that Ball be required to state a racially neutral basis for the challenges. Counsel for Ball responded that he did not challenge two or three other blacks on the panel. The trial court ruled that the requirements of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), had not been made applicable to civil cases.
The trial jury was composed of eight whites and four blacks. After trial, the jury returned a verdict in favor of Ball. Polling of the jury showed that the verdict was 9-to-3, with each of the jurors who voted for Scott being black. Scott's motion for a new trial was overruled, and she now appeals.

LAW
The record on appeal consists only of the jury selection. The issues presented in this appeal solely involve the jury selection process.

I. CHALLENGES FOR CAUSE
Scott contends the four peremptory challenges allotted by statute were not enough to excuse all the prospective jurors the circuit judge should have excused for cause. After several of the venire were excused by the court, there remained a panel of 43 prospective jurors. Following their questioning by counsel, Scott challenged twelve for cause. The court found Scott had stated a valid reason for seven of these because Dr. Ball or members of his medical firm had treated them or members of their family. Of the five remaining, Dr. Ball had upon one occasion treated the son of Hawkins, No. 8, and had occasionally treated the family of Smith, No. 20, over a period of ten years, but was not the family doctor of either. Of the remaining three, Thaggard, No. 19, was a registered nurse in Oxford; Munford, No. 22, was general manager of a local manufacturing plant with experience in workers' compensation claims; and Cobb, No. 54, had been sued six years previously following an automobile accident.
The circuit judge, as he must, has wide discretion in determining whether to excuse any prospective juror, including one challenged for cause. Mississippi Winn-Dixie *850 Supermarkets v. Hughes, 247 Miss. 575, 589, 156 So.2d 734, 738 (1963); McCarty v. State, 26 Miss. 299, 301, 1 Mor.St.Cas. 705 (1853); 50 C.J.S. Juries, § 208 b., and cases cited thereunder. The circuit judge has an absolute duty, however, to see that the jury selected to try any case is fair, impartial and competent. Miss. Const. art. 3, § 26; King v. State, 421 So.2d 1009, 1016 (Miss. 1982). "[T]rial judges must scrupulously guard the impartiality of the jury and take corrective measures to insure an unbiased jury." Hudson v. Taleff, 546 So.2d 359, 363 (1989); Miss. Power Co. v. Stribling, 191 Miss. 832, 845, 3 So.2d 807, 810 (1941).
To the extent that any juror, because of his relationship to one of the parties, his occupation, his past experience, or whatever, would normally lean in favor of one of the parties, or be biased against the other, or one's claim or the other's defense in the lawsuit, to this extent, of course, his ability to be fair and impartial is impaired. It should also be borne in mind that jurors take their oaths and responsibilities seriously, and when a prospective juror assures the court that, despite the circumstance that raises some question as to his qualification, this will not affect his verdict, this promise is entitled to considerable deference. Harding v. Estate of Harding, 185 So.2d 452, 456 (Miss. 1966); Howell v. State, 107 Miss. 568, 573, 65 So. 641, 642 (1914).
These varied imponderables make selection of jurors a judgment call peculiarly within the province of the circuit judge, and one we will not on appeal second guess in the absence of a record showing a clear abuse of discretion.
In our recent decision, Hudson v. Taleff, supra, we added a factor which the circuit judge should consider in reaching his decision whether or not to excuse a prospective juror when a rational reason to do so has been brought to his attention. Hudson likewise involved a suit against a physician in which a number of the jury panel or members of their family had been patients of his.
Because that suit was in Lauderdale County in which the circuit court could have, without hardship or any significant inconvenience, summoned additional jurors for the venire, we reversed. Our implicit, if not explicit holding in Hudson is that the circuit judge's discretion in determining a juror's qualification where a reasonable challenge has been made is considerably narrowed where, without great inconvenience, other prospective jurors may be readily summoned. When a rational challenge is made by a party to a prospective juror, and other jurors against whom no challenge is made are available, the circuit judge should ordinarily excuse the challenged juror.
In this case the circuit judge could have excused these challenged prospective jurors and still have had remaining on the panel a sufficient number against whom there had been no challenge to form a trial jury. Furthermore, the circuit judge could have directed the clerk to draw more names from the jury wheel. Hudson, supra. While Panola County has two judicial districts, thus reducing the number of prospective jurors that would have been the case had the jurors come from the entire county, it was also within the court's discretion to cause jurors to be summoned from the other judicial district. Miss. Code Ann. § 13-5-21 (Supp. 1991). Both districts are in the same county, they have the same circuit clerk, and there was no right in either party to have the panel of jurors restricted to one judicial district, so long as they all came from the same county. We are long past the horse and buggy days in getting to the county seat, and a circuit judge should not hesitate in enlarging the jury panel when legitimate questions for cause, for whatever reason, arise. These matters may upon occasion be appropriately addressed prior to trial by motion of counsel.
In a suit in which a physician is a party, a circuit judge must be sensitive to the qualification of a juror who has himself or herself been treated by him, or whose family members have at one time or another been patients of his. This is especially *851 true in our smaller cities and towns, where often there is a shortage of practicing physicians. Mississippians in less populated areas enjoy a close, fraternal relationship with their doctors, and regardless of a prospective juror's complete sincerity in his belief of his ability to be fair, it is only human nature that in most cases he will be more than reluctant to return a verdict against the physician. The circuit judge recognized this, of course, when he excused seven of the jurors challenged for cause for this reason. He erred in not excusing prospective juror Smith, No. 20, for cause for this reason.
We cannot say, however, that the court's refusal to excuse Hawkins, No. 8, for cause was an abuse of discretion, because Dr. Ball was neither her nor her family's doctor, and he only upon a single occasion treated her son. Scott's counsel did not see fit to elicit either the time or the extent of this treatment.
We need not address whether the circuit judge committed error in his refusal to excuse the remaining three challenged for cause, namely: Thaggard, Munford and Cobb, because Scott exercised peremptory challenges on Thaggard and Munford, and rather than exercise a peremptory challenge on Cobb, chose to exercise it on prospective juror Powell, No. 15, whom he had not challenged for cause.[1]
We have consistently held that the trial court may not be put in error for refusal to excuse jurors challenged for cause when the complaining party chooses not to exhaust his peremptory challenges. Caples v. City of Greenville, 207 So.2d 339, 341 (Miss. 1968). See also Chisolm v. State, 529 So.2d 635, 639 (Miss. 1988); Nixon v. State, 533 So.2d 1078, 1085 (Miss. 1987), cert. denied, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989); Johnson v. State, 512 So.2d 1246, 1255 (Miss. 1987), cert. denied, 484 U.S. 968, 108 S.Ct. 462, 98 L.Ed.2d 402 (1987).
This principle is applicable here. If Scott had any objection to Powell, it was her counsel's duty to call it to the court's attention in a challenge for cause. A party may not remain silent when an opportunity is presented to challenge a prospective juror for cause, opting instead to simply exercise a peremptory challenge on this juror, and then complain because the court refused to excuse another juror for cause upon whom he did exercise a peremptory challenge. Such a tactic would enable counsel to enlarge the number of peremptory challenges allotted him. There is no ground for reversal in this assignment.

II. BATSON IN CIVIL CASES
During jury selection, Ball exercised each of his four peremptory challenges to a prospective juror who was black:
MR. MERKEL (Scott's attorney):
Plaintiff exercises peremptory challenge No. 1 on Juror 15, Mr. Powell. We accept Mr. Jenkins, as 9. P-2 on Thaggard. P-3 on Smith. We accept Bolen. That's 10. And P-4 on Munford.
MR. DUNBAR (Ball's attorney):
Okay. We'll use D-1 on Olivett Cox, No. 4. We use D-2 on Mille B. Upshaw. As I understand it, that will bring in the box Mosely and Tidwell, right?
THE COURT:
Right.
MR. DUNBAR:
All right. We strike Mosely, D-3. And that brings up Corner. I use D-4 on Corner. And then that will take us to Connell.
MR. MERKEL:
For the record, I can not help but observe, but all four of those challenges are to black members of the panel and according to my notes, three of those members never responded to any question in voir dire and I would *852 like to ask for racially neutral reasons on the challenges, if one exists.
MR. DUNBAR:
We passed two or three blacks that weren't challenged. Tommy Lee Turner wasn't challenged.
MR. MERKEL:
But all four challenges were to blacks, three of which made no response to any question and there is no apparent reason for it other than race. Just for the record, I ask if there is a neutral reason for the challenges for those last three 
MR. DUNBAR:
I don't know of any rule that will require us to get into some sort of cross-examination about that. If there is, I am unaware of it.
THE COURT:
To my knowledge, Batson v. Kentucky has not been made applicable to civil cases. It created enough mess in the criminal practice. I don't know any application as to civil cases.
MR. COCKE (Scott's attorney):
We would like to say that it does apply to civil cases and believe there is authority to that. It's the United States Constitution that requires that.
After Scott filed her brief on May 17, 1991, the United States Supreme Court ruled on June 3, 1991, in Edmonson v. Leesville Concrete Co., 500 U.S. ___, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), that the principles of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), apply to civil cases. At the time he filed his brief, July 8, 1991, Ball also filed a motion for partial remand. Ball requests that in light of Edmonson, we remand for a Batson hearing before the circuit judge, as authorized in Williams v. State, 507 So.2d 50, 51 (Miss. 1987). If the circuit judge finds that racial discrimination occurred in the use of peremptory challenges, then a new trial should be ordered; if he finds that a race-neutral reason existed for the peremptory challenges, a record of the hearing and the circuit judge's findings should be submitted to this Court. Scott on the other hand seeks reversal now.
In Williams the accused black was charged with burglary. Williams v. State, 507 So.2d 50, 51 (Miss. 1987). Six black persons were on the original venire; the court removed one. Id. The state peremptorily challenged the remaining five. Batson had not then been decided. Williams was convicted.
While the appeal in Williams was pending, the U.S. Supreme Court decided Batson, which held that a criminal defendant establishes a prima facie case of an unconstitutional exclusion of minority jurors by use of peremptory challenges by showing (1) that he is a member of a "cognizable racial group," (2) that the prosecution has exercised peremptory challenges toward the elimination of prospective jurors of the defendant's race, and (3) that these facts and circumstances infer that these challenges were made for the purpose of striking minorities from the jury. Batson, 476 U.S. at 96, 106 S.Ct. at 1723. The burden then shifts to the prosecution to provide a racially-neutral reason for each of the peremptory challenges. Id. Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), was decided shortly after Batson, and it gave Batson retroactive effect to all cases pending on direct review or not yet final.
In Williams we held that since Williams perfected his appeal some two months before Batson, and his conviction was not yet final, Griffith extended the rights guaranteed by Batson to him. Williams, 507 So.2d at 53. We held that Williams made a prima facie case of illicit peremptory challenges, and that the prosecutor's explanation for the peremptory challenges was insufficient under Batson. We further held, however, that reversal was not necessary because Batson had not been decided when the district attorney made the challenges, and the prosecution could not be said to have waived the opportunity to offer racially neutral reasons in its exercise of peremptory challenges because it had no reason to know it was obligated to do so. We remanded with instructions that the district attorney be given an opportunity to offer racially neutral explanations for each of *853 the peremptory challenges he used on black persons, and held consideration of the appeal in abeyance until a Batson hearing in the circuit court was conducted. Id. If the circuit court found purposeful discrimination in the prosecution's use of the peremptory challenges, it should order a new trial. Id. at 54. However, if the court did not find any impermissible discrimination, we would consider the evidence adduced at the hearing to determine if reversal was required. Id.; see also Dedeaux v. State, 519 So.2d 886, 888 (Miss. 1988); Harper v. State, 510 So.2d 530, 532 (Miss. 1987).
Both parties agree that Edmonson controls this case, their disagreement being whether we should, as Dr. Ball has moved, remand for a hearing before the circuit judge as authorized in Williams, or as Scott argues, reverse outright.
There is much to be said for the procedure we followed in Williams, and the defense in this case had no more reason to anticipate Edmonson than the district attorney in Williams to anticipate Batson.
Again, however, experience has taught us that cases in general should not be tried in bits and pieces. Judicial economy is not advanced thereby.
This is a civil case, and although it is a complaint of malpractice against a doctor, it should not entail complex or detailed evidence and, at least as far as the defendant doctor is concerned (and the one objecting to reversal now), witnesses in his defense should be easily and readily available. This case, in the interest of both parties, needs to be tried and concluded as soon as reasonably possible.
There is another problem with simply remanding for a circuit judge Batson hearing. When the four black prospective jurors were peremptorily challenged, counsel had no reason to suppose he had to have any reason at all to excuse them. Asking him and the circuit judge two years later to resurrect from memory some Batson-approved basis for peremptory challenge is neither fair nor satisfying.
There may be cases in which judicial economy will be better served by a Williams procedure, but that will be a case having special or unusual features. This is not such a case.
Accordingly, we reverse and remand for a new trial.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] Scott exercised her four peremptory challenges on Powell, Thaggard, Munford and Smith.