# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01079-SCT

*KAY T. NUNNALLY, INDIVIDUALLY AND ON
BEHALF OF ALL WRONGFUL DEATH
BENEFICIARIES OF JOSEPH LEE NUNNALLY,
DECEASED*

*v.*

*R. J. REYNOLDS TOBACCO COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 7/12/2000 |
| TRIAL JUDGE: | HON. GEORGE C. CARLSON, JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHARLES M. MERKEL |
| | JACK R. DODSON, JR. |
| ATTORNEYS FOR APPELLEE: | MICHAEL W. ULMER |
| | LEWIS W. BELL |
| | EDWARD C. SCHMIDT |
| | JOSEPH M. DAVID |
| | WILLIAM H. LISTON |
| | DAVID B. ALDEN |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 03/25/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     On August 31, 1992, plaintiff Kay T. Nunnally filed a civil action against R. J.

Reynolds Tobacco Company ("RJR"), Basic Foods, and other retailers. She asserted that

the cigarettes sold to her husband were defective and unreasonably dangerous. Along with

a claim of strict liability, plaintiff asserted claims of negligent design defect, failure to warn,

fraud, misrepresentation, and conspiracy. The case was removed to federal court, but was subsequently remanded to the Circuit Court of DeSoto County.

¶2. Before trial, the court granted the defendants' motion for partial summary judgment regarding the plaintiff's claims of fraud, negligent misrepresentation, warning, and conspiracy. The case went to trial on only the strict liability and negligence claims.

¶3. The jury returned a verdict in favor of RJR, and the trial court entered final judgment on the same day. Plaintiff filed a motion for JNOV or in the alternative a new trial, which the trial court denied. From these decisions, plaintiff appeals.

**FACTS**

¶4. Joseph Lee Nunnally (Nunnally) was born in 1952. He first experimented with cigarettes at the age of eight with his older brother. Nunnally became a regular smoker sometime in the mid-1960's. By the time Nunnally married in 1976, he was "a smoker" and continued to smoke his entire life until he was diagnosed with lung cancer in 1988 and stopped smoking. Nunnally's original brand was Salem cigarettes, but he switched to Doral, because they were cheaper. Both brands are products of RJR.

¶5. Since 1966, all cigarette packages have been required to display warnings that cigarette smoking presented health risks. In 1972, Congress mandated that all advertisements about cigarettes must do the same. All advertisements and cigarette packages that Nunnally came across after these respective dates contained this message. In 1988, doctors diagnosed Nunnally with lung cancer. After undergoing radiation treatment, Nunnally found a specialist in Houston, Texas, who was willing to remove the cancerous lung. Nunnally's right lung was removed, and he underwent chemotherapy. In 1989, after

2

experiencing great pain, Nunnally returned to the doctor.  Tests revealed that the cancer had returned and spread.  Later that year, Nunnally, his wife, and their four children went on vacation to Panama City, Florida.  On September 1, 1989, Nunnally's wife found him on the floor in the condominium vomiting.  She called paramedics, who took Nunnally to the hospital.  He died later that night from complications from the cancer.

## DISCUSSION

I.     **WHETHER THE TRIAL COURT ERRED IN SUBMITTING A SPECIAL INTERROGATORY TO THE JURY WHICH PERMITTED THE APPEARANCE OF THE NEED OF THE JURY TO FIND A DEFECT IN THE CIGARETTES SEPARATE AND APART FROM THE FACT THAT UNDER THE RISK-UTILITY TEST THEY WERE UNREASONABLY DANGEROUS.**

¶6.     The trial court submitted the following interrogatory to the jury:

1. Do you find from the preponderance of the evidence that the cigarettes designed and manufactured by R. J. Reynolds Tobacco Company and smoked by Joe Nunnally were in a "defective and unreasonably dangerous" condition as defined elsewhere in these instructions?

    __ Yes      __ No

If you answered "no," then proceed no further.  If you answered "yes," then go to the next question.

2. Has plaintiff proven by a preponderance of the evidence that the "defective and unreasonably dangerous" condition of the cigarettes designed by R.J. Reynolds Tobacco Company proximately caused or substantially contributed to Joe Nunnally's cancer and death?

    __ Yes      __ No

If you answered "no," then proceed no further.  If you answered "yes," then go to the next question.

3

3. Do you find from a preponderance of the evidence that Joe Nunnally was negligent by knowing and appreciating the dangers of smoking cigarettes and exposing himself to those dangers by smoking? If so, then state the percentage below.

___ %

4. What are the total compensatory damages sustained as a result of the death of Joe Nunnally?

$___

The jury answered question one in the negative. Plaintiff argues that this special interrogatory includes language from instructions D-7 and D-8, which the trial court denied. Plaintiff contends that RJR was, therefore, permitted to argue that no specific manufacturing defect was present in the cigarettes and that RJR's products were the same as all other cigarettes. Moreover, plaintiff asserts that her requested special interrogatory would have eliminated the perceived confusion. RJR argues in response that the special interrogatory correctly stated the law; the court properly instructed the jury regarding risk-utility; and this issue is procedurally barred because plaintiff did not object to the language complained of before the trial court.

¶7.    Our standard of review for jury instructions is as follows:

> [T]he instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case. However, the trial judge may also properly refuse the instructions if he finds them to incorrectly state the law or to repeat a theory fairly covered in another instruction or to be without proper foundation in the evidence of the case.

*Howell v. State*, 860 So.2d 704, 761 (Miss. 2003). Where a party fails to make a contemporaneous objection to a proposed jury instruction so that the trial court has an

opportunity to cure the defect, we are procedurally barred from considering arguments that the trial court erred in submitting the instruction. *Haggerty v. Foster*, 838 So.2d 948, 954 (Miss. 2002). Thus, failure to object constitutes a waiver of that assertion on appeal. *Id.* "When reviewing the form or content of special interrogatories it is essential that adequate objections were timely made." *Jones v. Westinghouse Elec. Corp.*, 694 So.2d 1249, 1251 (Miss. 1997) (quoting *Barton's Disposal Serv., Inc., v. Tiger Corp.*, 886 F.2d 1430 (5th Cir. 1989)). We have held that the appropriate procedure for preserving this issue for appeal is (1) making a clear objection for the record, or (2) proposing an alternative interrogatory. *Id.*

¶8. We find that plaintiff did not preserve this issue for appeal. She is, therefore, procedurally barred from raising this issue. RJR concedes that plaintiff's attorney initially objected to proposed Instruction D-24, the instruction on which Special Interrogatory Number 1 was based. However, Nunnally's attorney participated in the subsequent modification of RJR's proposed instruction D-24. Nunnally's attorney did not object to the language at issue here during the modification, nor did he object after the modifications were complete. We find that this issue is without merit.

> **II. WHETHER THE VERDICT OF THE JURY WITH RESPECT TO SPECIAL INTERROGATORY NUMBER ONE WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND THE TRIAL COURT ERRED IN REFUSING TO GRANT A JUDGMENT NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE, A NEW TRIAL.**

¶9. When considering whether a jury verdict was against the overwhelming weight of the evidence, we "show great deference to the jury verdict by resolving all conflicts in the

5

evidence and every permissible inference from the evidence in the appellee's favor." ***Venton v. Beckham***, 845 So.2d 676, 684 (Miss. 2003) (quoting ***Wal-Mart Stores, Inc. v. Johnson***, 807 So.2d 382, 389 (Miss. 2001). We will disturb a jury verdict on appeal only if it "is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." ***Id.*** (quoting ***Herrington v. Spell***, 692 So.2d 93, 103-04 (Miss. 1997)).

¶10.   "[T]he standard of review for denials of motions for directed verdict, judgment notwithstanding the verdict and a request for a peremptory instruction is the same." ***Shelton v. State***, 853 So.2d 1171, 1186 (Miss. 2003). Each tests the legal sufficiency of the evidence presented to the trial court. ***Id.***   We properly review the ruling "on the last occasion the challenge was made in the trial court, when the circuit court overruled the JNOV." ***Id.*** Further, we have stated:

> [T]his Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required. The above standards of review, however, are predicated on the fact that the trial judge applied the correct law.

***Ala. Great S. R. Co. v. Lee***, 826 So.2d 1232, 1235-36 (Miss. 2002). Moreover, where a party requests a new trial and the trial court denies that request, we will reverse only if the denial amounts to an abuse of discretion. ***Id.*** at 1236.

¶11.   Plaintiff argues that the verdict should have been overturned because the jury instructions were too confusing. She further contends that if the jury had been given the

correct instructions, it would not have rendered the verdict that it did in this case. Plaintiff refers us to ***Sperry-New Holland v. Prestage***, 617 So.2d 248 (Miss. 1993), in support of this argument. While ***Prestage*** does stand for the proposition that Mississippi uses the risk-utility analysis instead of the "consumer expectations" analysis, it does not support plaintiff's argument that "there is no requirement that a product either differ from its intended form or have a manufacturing defect." The simple fact is that plaintiff's claim is based on a strict liability design **defect**. The language of the risk-utility instruction that was given to the jury, which originated from plaintiff's proposed P-2A instruction and was approved by the plaintiff at trial, contains the words "defective condition." Furthermore, Section 402A of the Restatement (Second) of Torts (1965) employs the wording "defective condition unreasonably dangerous". ***Prestage*** states "Section 402A is still the law in Mississippi." ***Id***. at 254. In light of these facts, the trial court properly instructed the jury.

¶12.    Plaintiff further contends that the verdict was against the weight of the evidence. She asserts that she presented solid evidence about the risks of cigarettes and smoking, supported by all the warnings that are required by law to be on advertisements and packaging. In addition, plaintiff contends that she presented evidence about the alleged minimal utility of cigarettes. She contends that no reasonable juror could have heard the evidence that was presented and conclude that the utility of cigarettes outweighs their risk.

¶13.    This Court in ***Prestage*** held:

> In balancing a product's utility against the risk of injury it creates, a trial court may find it helpful to refer to the seven factors enumerated in Professor John Wade's article, On the Nature of Strict Tort Liability for Products, 44 Miss.L.J. 825. The factors are:

7

(1) The usefulness and desirability of the product--its utility to the user and to the public as a whole.
(2) The safety aspects of the product--the likelihood that it will cause injury, and the probable seriousness of the injury.
(3) The availability of a substitute product which would meet the same need and not be as unsafe.
(4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
(5) The user's ability to avoid danger by the exercise of care in the use of the product.
(6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.
(7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

617 So. 2d at 256. The parties agreed to omit the seventh factor from the instructions submitted to the jury.

¶14.    With respect to the *Prestage* factors, RJR presented an array of evidence that included information regarding Nunnally's enjoyment and love of cigarette smoking, as well as expert evidence regarding the subjective personal benefits reported by smokers. There was evidence that there exists no "safe" cigarette and that RJR constantly did research to provide the safest, consumer-desirable cigarette possible. Plaintiff was not aware that her husband had ever tried to quit smoking, therefore avoiding any danger from the product. Further, there was evidence concerning the community awareness of the cigarette smoking's harmful effects.

¶15.    In light of the evidence presented and the fact that plaintiff put on evidence only to support the "unreasonably dangerous" aspect of the case and failed to provide evidence of

8

any type of defect, we find that the trial court did not err in refusing to grant a judgment notwithstanding the verdict or in the alternative, a new trial.

### III. WHETHER THE COURT ERRED IN FAILING TO INSTRUCT THE JURY ON PLAINTIFF'S CLAIM OF NEGLIGENCE.

¶16.    We afford trial courts "considerable discretion regarding the form and substance of jury instructions." *Splain v. Hines*, 609 So.2d 1234, 1239 (Miss. 1992). This Court does not look at jury instructions in isolation - rather, we read them as a whole.  *Entergy Miss., Inc. v. Bolden*, 854 So.2d 1051, 1054 (Miss. 2003).  "While a party is entitled to have jury instructions submitted that represent his or her theory of the case, an instruction that 'incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence' need not be submitted to the jury." *Id.*  (quoting *Humphrey v. State*, 759 So.2d 368, 380 (Miss. 2000).  If, after reading the instructions as a whole, we find that they fairly announce the law of the case and create no injustice, then we will not find reversible error. *Bolden*,  854 So.2d at 1054.

¶17.    Plaintiff argues that she was deprived of a jury instruction on negligence.  She contends that her complaint contained claims for negligent design and for simple negligence. Plaintiff maintains that although half of the trial was consumed with evidence regarding negligence and proximate cause, the trial court denied the proffered negligence instructions and submitted the case to the jury solely on the theory of strict liability.  She asserts that RJR made "the reasonableness of its conduct the theme of its defense"; RJR was negligent in not removing the more dangerous higher tar brands from the product line, thereby forcing

9

acceptance of the safer brand; and RJR was negligent for marketing the cigarettes when it knew the cigarettes were addictive and deadly.

¶18.    First, we consider plaintiff's negligent design claim.  Our holding in *Estate of Hunter v. General Motors Corp.*, 729 So.2d 1264 (Miss. 1999), is directly on point. In *Hunter*, the trial court refused to accept the plaintiff's requested negligence instruction.  Instead, the court gave an instruction based on the risk-utility test set out in  *Prestage*, just as the trial judge did here.  In *Hunter*, we relied on *United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir. 1947), for the proposition that "[t]he risk-utility balancing test is merely a detailed version of Judge Learned Hand's negligence calculus." 729 So.2d at 1277.  "As a common-sense matter, the jury weighs competing factors presented in evidence and reaches a conclusion about the judgment or decision (i.e., conduct) of the manufacturer. The underlying negligence calculus is inescapable."  *Hunter*, 729 So.2d at 1277.  "An examination of the riskutility [sic] test establishes that the test is essentially a negligence test, and [there was]....no error in failing to grant a negligence instruction in addition to the risk-utility test."  *Id*. at 1278.  Because *Hunter* controls the case at hand, we find that the trial court did not err when it refused to submit a negligence instruction in addition to the *Prestage*-based instruction.

¶19.    Next we consider plaintiff's claim that RJR was guilty of negligence in selling the cigarettes after RJR became aware that its cigarettes were addictive and could result in death. We find that this point is without merit because it is the same claim that plaintiff asserted in different wording through its defective design claim.

10

¶20. Third, plaintiff asserts that RJR was negligent in not removing the higher tar brands from the product line and forcing acceptance of the lower tar brands. This argument also mirrors the design defect claim since, in essence, it states that the levels of tar found in the cigarettes is a defect. Plaintiff failed to proffer any evidence that the proximate cause of Nunnally's death was RJR's failure to remove the higher tar brands from the market. Therefore, this point is without merit.

¶21. Next, plaintiff contends that RJR was negligent because it withheld from the governmental and scientific communities information concerning carcinogens found in cigarette smoke; maintained the appearance of a controversy over whether cigarettes caused lung cancer when no such controversy existed; and failed to encourage smokers to use a lower tar brand developed by RJR as their only brand. All three of these arguments are covered by plaintiff's claims of failure-to-warn, misrepresentation, which were dismissed before trial began. Thus, we find that this point is likewise without merit.

¶22. Finally, plaintiff contends that RJR made its central issue the "reasonableness of their actions," thereby making that the negligence instruction was an essential part of this trial. RJR asserts that plaintiff picks and chooses phrases from the transcript in order to make it seem like this was the case. In fact, all testimony that plaintiff refers to was given by David Townsend, an RJR expert. RJR asserted that Townsend is a design expert and the focus of his testimony was RJR's design efforts to make the safest, most desirable product possible. We find that this point is without merit.

¶23. We find that the trial court committed no error in refusing the proffered negligence instruction.

**IV.	WHETHER THE COURT COMMITTED ERROR BY GRANTING THE DEFENDANT'S MOTION IN LIMINE CONCERNING THE "FRANK STATEMENT TO CIGARETTE SMOKERS".**

¶24.	RJR made a motion in limine requesting the exclusion of a document entitled "Frank Statement to Cigarette Smokers" (Frank Statement) that was published on January 4, 1954, in newspapers nationally, including those circulated in the Southaven, Mississippi, area. The trial court granted the motion, thereby excluding the document. Our standard of review for either the admission or exclusion of evidence is abuse of discretion. *Harrison v. McMillan*, 828 So. 2d 756, 765 (Miss. 2002).

¶25.	A group of tobacco companies which included RJR sponsored the publication of the Frank Statement. It stated, inter alia, that "[r]ecent reports on experiments with mice have given wide publicity to a theory that cigarette smoking is in some way linked with lung cancer in human beings." Further, it stated that the company sponsors did not regard the experiments as conclusive in the field of cancer research. The companies "pledg[ed] aid and assistance to the research effort into all phases of tobacco use and health." To that end, the companies created the Tobacco Research Committee.

¶26.	Plaintiff asserts that the Frank Statement should have been allowed because it supported her claim of negligence. She asserts that the Frank Statement explains in detail the responsibility that RJR took upon itself but subsequently breached. RJR, in contrast, argues that there was no proffer to the court of the evidence that the plaintiff wanted to submit, and therefore, the issue was not properly preserved for appeal. RJR cites *Metcalf v. State*, 629 So.2d 558, 567 (Miss. 1993) for the proposition that "when testimony is

12

excluded at trial, a record must be made of the proffered testimony in order to preserve the point for appeal." Alternatively, RJR asserts that the circuit court did not abuse its discretion in denying the motion.

¶27.    Motions in limine are properly granted "only when the trial court finds two factors are present: (1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury." *Tatum v. Barrentine*, 797 So.2d 223, 228 (Miss. 2001) (quoting *Whittley v. City of Meridian*, 530 So.2d 1341, 1344 (Miss. 1988)).  M.R.E. 103(a) states:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a **substantial right** of the party is affected, and
> * * *
> (2) Offer of Proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

(emphasis added).   The Comment to M.R.E. 103 states: "when a party objects to the exclusion of evidence, he must make an offer of proof to the court, noting on the record for the benefit of the appellate court what evidence the trial judge excluded." (citing *Brown v. State*, 338 So.2d 1008 (Miss. 1976); *King v. State*, 374 So.2d 808 (Miss. 1979)).

¶28.    We find that the learned trial judge did not abuse his discretion in granting the motion in limine.  The transcript indicates that there were lengthy arguments before the trial judge regarding RJR's public statements, including the Frank Statement.  Thus, we find that M.R.E. 103(a) is satisfied.  Furthermore, the record indicates that Joseph Nunnally was not yet two years old when the Frank Statement was published nationally.  Thus, it is apparent

13

that Mr. Nunnally could not have read, understood, or relied on this statement in any meaningful way. Plaintiff also admitted she had no evidence that her husband saw, heard, or relied upon any of RJR's public statements in choosing to start or continue smoking. We find that the Frank Statement was not relevant to any issue in this case and was, therefore, inadmissible. Moreover, we find that the Frank Statement would have unfairly prejudiced the jury. Because the *Whittley* standard and M.R.E. 103(a) are satisfied, granting the motion in limine was appropriate under this Court's established precedent.

## V. WHETHER THE MATERIALS THAT WERE EXCLUDED BY THE MOTION IN LIMINE BECAME RELEVANT AND ADMISSIBLE FOR IMPEACHMENT PURPOSES.

¶29. Plaintiff argues that the design expert, Dr. David Townsend, presented testimony about the company's "responsibleness and reasonableness" and asserts that this testimony was used to exonerate RJR "in the eyes of the jury as to all of its sales and marketing activities." Plaintiff therefore contends that she should be able to refute this evidence by presenting the "Frank Statement" discussed in issue IV and any other material that was excluded before trial.

¶30. There is no merit in this argument due to the simple fact plaintiff has misconstrued the testimony on which she bases her argument. She contends that Dr. Townsend's testimony is commented on and bolstered RJR's responsibility and reasonableness in *marketing and sales*. But the actual testimony on which the plaintiff's argument is based states, "I also believe that **from this first rate research and development effort**, we've been responsible and reasonable in addressing smoking and health issues and actually making a difference." (emphasis added).

14

¶31.   Dr. Townsend is a design expert.  This testimony makes clear that he was testifying about RJR research and development activities and nothing else.

¶32.   We find that the trial court did not abuse its discretion in excluding the evidence at issue here.  Therefore, this assignment of error is without merit.

### VI.   WHETHER THE COURT ERRED IN EXCLUDING PROOF OF THE DEFENDANT'S YOUTH MARKETING PRACTICES.

¶33.   Plaintiff contends that she should have been allowed to present as evidence a 1973 memorandum written by Claude E. Teague, Jr., Ph.D., an RJR scientist, titled, "*Some thoughts About New Brands of Cigarettes for the Youth Market*."  Plaintiff argues that she should have been permitted to present this article to show RJR's knowledge regarding youth marketing.   Moreover, Plaintiff asserts that this evidence would have shown that Joe Nunnally was not negligent and simply succumbed to peer pressure in exactly the manner anticipated by RJR.

¶34.   We find that this argument is without merit.  The article in question was published in 1973.  Nunnally was born in 1952 and began smoking in 1960.  Nunnally became a habitual smoker in the mid-1960's.  By 1973, Nunnally was twenty-one-years old and no longer a minor.  Therefore, RJR's actions after this article was published could not have influenced Nunnally to begin smoking or affected his smoking habits as a minor.  Therefore, the trial court was correct in refusing to admit it into evidence.

### VII.   WHETHER THE COURT ERRED IN ALLOWING DEFENDANT'S EXPERT WITNESS DR. GEORGE SEIDEN TO OFFER OPINION TESTIMONY AS TO THE PLAINTIFF'S APPRECIATION OF CERTAIN RISKS AND HIS ALLEGED ABILITY TO STOP SMOKING AT WILL.

¶35. Rulings on the admissibility of expert testimony are reviewed for abuse of discretion. *Gatewood v. Sampson,* 812 So.2d 212, 221 (Miss. 2002). The Plaintiff asserts that Dr. George Seiden's expert testimony should have been excluded because he had never had any contact with Nunnally nor read any type of deposition he might have ever made and he formed an opinion about whether Nunnally could have stopped smoking whenever he chose to. She also argues that Dr. Seiden's opinion should not have been admitted because the information on which he based his opinion was never admitted and would not have been admissible.

¶36. Whether an expert witness is qualified to testify is within the trial court's discretion. *See, Detroit Marine Eng'g v. McRee,* 510 So.2d 462, 467 (Miss. 1987); *Hooten v. State,* 492 So.2d 948 (Miss. 1986). The test is whether a witness "possesses peculiar knowledge or information regarding the relevant subject matter which is not likely to be possessed by a layman." *See also May v. State*, 524 So.2d 957, 963 (Miss. 1988); *McRee,* 510 So.2d at 467; *Henry v. State,* 484 So.2d 1012, 1015 (Miss. 1986). There was no abuse of discretion in allowing Dr. Seiden to testify concerning Nunnally's ability to quit smoking.

¶37. M.R.E. 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

¶38. M.R.E. 703 clearly states that experts can base their testimony on facts or data that need not be admissible in evidence. "[F]orensic psychiatry is recognized as a proper field of expertise...." *May*, 524 So. 2d at 963.

16

¶39. Dr. Seiden was clearly established as a seasoned expert in the fields of psychiatry and forensic psychiatry. Dr. Seiden testified that he based his scientific opinion on "deposition testimony of [Nunnally's] wife, his mother, his father, his siblings, his friends from childhood, his friends from school and his adult life, teachers at various stages in his life. Physicians who treated him, and then ... also reviewed the medical records of the physicians who treated him." Dr. Seiden explained how he took this information he had gathered and formed an opinion by applying the background education, experience with other smokers and addicts of other substances and his knowledge of addictions.

¶40. Because M.R.E. 703 allows an expert to form an opinion on facts or data that is inadmissible and that forensic psychiatry has been recognized as a proper field of expertise we find that no error was committed by the trial court in allowing Dr. Seiden to form an opinion on whether Nunnally could have stopped smoking at any time.

**VIII. WHETHER THE COURT ERRED IN RESTRICTING PLAINTIFF'S CROSS-EXAMINATION OF DEFENSE WITNESSES TOWNSEND AND SEIDEN ABOUT THE INDUSTRY'S ACTION TO INFLUENCE PUBLIC OPINION AND KNOWLEDGE AS TO THE RISKS OF SMOKING.**

¶41. Plaintiff argues that there were at least four different occasions during cross-examination in which she was not allowed to pursue her line of questioning and, therefore, the trial court erred in not allowing her to pursue this questioning.

¶42. Plaintiff contends that these lines of questioning would have helped prove that "smokers such as Joe Nunnally did not truly understand how serious the risk of smoking is." While this is what the plaintiff said that she wished to prove, none of the lines of questioning that are cited in the plaintiff's brief support this argument. Each and every line of

17

questioning either pertained to evidence that was excluded in a motion in limine, claims that were dropped before the trial and therefore not at issue, or were cumulative because it was allowed elsewhere during the questioning. The plaintiff has failed to show that the trial court abused its discretion. This issue is without merit.

### IX. WHETHER THE COURT ERRED IN DENYING PLAINTIFF'S CHALLENGES FOR CAUSE OF FOUR JURORS.

¶43.    Plaintiff asserts that four different jurors should have been excused for cause, which, according to the plaintiff, could not be removed by using her peremptory strike because it would have allowed the seating of another juror which she claimed "may be the most strongly opinionated juror we've had in here from the standpoint of the ultimate issues in the case."

¶44.    We have held:

> It should .... be borne in mind that jurors take their oaths and responsibilities seriously, and when a prospective juror assures the court that, despite the circumstance that raises some question as to his qualification, this will not affect his verdict, this promise is entitled to considerable deference ... These varied imponderables make selection of jurors a judgment call peculiarly within the province of the circuit judge, and one we will not on appeal second guess in the absence of a record showing a clear abuse of discretion.

*Scott v. Ball,* 595 So.2d 848, 850 (Miss. 1992) (citing *Harding v. Estate of Harding,* 185 So.2d 452, 456 (Miss. 1966); *Howell v. State,* 107 Miss. 568, 65 So. 641, 642 (1914)). *Accord*, *Hamilton v. Hammons,* 792 So.2d 956, 963 (Miss. 2001).

¶45.    This Court has a long-standing rule that when a party has challenges remaining and fails to use them, he cannot object to the court for failing to excuse a juror for cause. *Davis*

*v. Wal-Mart Stores, Inc.*, 724 So.2d 907, 911 (Miss. 1998); *Capler v. City of Greenville*, 207 So.2d 339, 341 (Miss. 1968) (citing *Bone v. State*, 207 Miss. 20, 41 So.2d 347 (1949)).

¶46.    The threshold test for an objection to the court's failure to excuse a juror for cause is a showing on appeal that the objecting party had used all of his peremptory challenges and the party was forced to take the incompetent juror. *Chisolm v. State*, 529 So.2d 635, 639 (Miss. 1988). Any other rule would allow the objecting party to take advantage of error he helped commit. *Capler*, 207 So.2d at 341.

¶47.    We find that plaintiff's arguments are without merit. The trial judges decide whether jurors need to be excused for cause. The trial judge views the demeanor and hears the responses of each possible juror. Plaintiff reserved one of her peremptory challenges, deciding not to exhaust them. Mississippi law holds that before one can appeal based on whether a juror should be excused, they must exhaust all peremptory challenges. Plaintiff did not do this and, therefore, cannot raise this point on appeal.

¶48.    We find that the trial court did not err in denying plaintiff's challenges for cause. Thus, this issue is without merit.

## CONCLUSION

¶49.    Because the issues presented are without merit, we affirm the judgment of the DeSoto County Circuit Court.

¶50.    **AFFIRMED.**

**PITTMAN, C.J., WALLER, P.J., COBB AND DICKINSON, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ AND CARLSON, JJ., NOT PARTICIPATING.**

**EASLEY, JUSTICE, DISSENTING:**

¶51. I must respectfully dissent from the majority's finding that the trial judge acted properly in its handling of the "Frank Statement to Cigarette Smokers." The trial judge rejected the statement based solely on arguments made by the attorneys at the motion in limine. Clearly, the statement was published by a group of tobacco companies including the defendant, RJR on January 4, 1954. The statement provided, "recent reports on experiments with mice have given wide publicity to a theory that cigarettes smoking is in some way linked with lung cancer in human beings." However, the tobacco companies did not print warning labels on the cigarette packages until 1966. Therefore, the tobacco companies waited approximately 12 years between publication of the Frank Statement and the introduction of warning labels to inform smokers of the dangers of smoking. Nunnally was not born until 1952 and begin experimentation at approximately age 8. Nunnally did not become a regular smoker until the mid-1960's.

¶52. Apparently, the tobacco companies had notice of potential hazardous, cancer causing consequences of smoking in 1954 when it published the Frank Statement before Nunnally became a regular smoker. However, the Frank Statement was not published again. The warnings were not displayed until 1966 on the cigarette packages and then in all advertisement in 1972.

¶53. Therefore, the trial judge erred in not allowing Frank Statement to be considered by the jury. I would reverse and remand for a new trial.

20